# 14-2104-cv(L)

## 14-2105-cv (CON), 14-2106-cv (CON), 14-2107-cv (CON), 14-2108-cv (CON), 14-2109-cv (CON), 14-2111-cv (CON), 14-2112-cv (CON)

## United States Court of Appeals

*for the*

## Second Circuit

EDUARDO PURICELLI, RUBEN CHORNY, HICKORY SECURITIES, LTD., RODOLFO VOGELBAUM, ELIZABETH ANDREA AZZA, CLAUDIA FLORENCIA VALLS, SILVIA SEIJAS, HEATHER M. MUNTON, THOMAS L. PICO ESTRADA, EMILIO ROMANO, RUBEN WEISZMAN, ANIBAL CAMPO, MARIA COPATI AND CESAR RAUL CASTRO,

*Plaintiffs-Appellees,*

— v. —

REPUBLIC OF ARGENTINA,

*Defendant-Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF DEFENDANT-APPELLANT THE REPUBLIC OF ARGENTINA

*Of Counsel:*
Jonathan I. Blackman
Carmine D. Boccuzzi
Daniel J. Northrop
Jacob H. Johnston

CLEARY GOTTLIEB STEEN & HAMILTON LLP
*Attorneys for Defendant-Appellant*
One Liberty Plaza
New York, New York 10006
(212) 225-2000

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................ ii

PRELIMINARY STATEMENT ........................................... 1

JURISDICTIONAL STATEMENT ...................................... 3

ISSUES PRESENTED FOR REVIEW .................................. 3

STATEMENT OF THE CASE ............................................. 4

    I.    THE ORIGINAL CLASS CERTIFICATION ORDERS AND PRIOR DECISIONS BY THE COURT .................................. 4

        A. The *Seijas* Actions and the Court's Decision in *Seijas I* .......... 4

        B. The Court's Decision in *Seijas II* ............................... 7

    II.    PROCEEDINGS BEFORE THE DISTRICT COURT ON REMAND ................................................................. 10

SUMMARY OF THE ARGUMENT .................................... 15

STANDARD OF REVIEW ................................................ 17

ARGUMENT ................................................................. 19

    I.    THE CLASS CERTIFICATION ORDERS VIOLATE THE MANDATE RULE .......................................................... 19

    II.    A CLASS WHOSE MEMBERSHIP IS INDETERMINABLE VIOLATES THE REQUIREMENT OF ASCERTAINABILITY AND THE DUE PROCESS RIGHTS OF ABSENT CLASS MEMBERS .................................... 24

        A. Plaintiffs' Classes Are Unascertainable .................... 24

        B. Sufficient Notice to Absent Class Members Is Impossible Under the Expanded Class Definition ..................... 27

    III.    THE CLASS CERTIFICATION ORDERS IMPERMISSIBLY EXPAND THE CLASSES AFTER THE DISTRICT COURT DETERMINED LIABILITY IN VIOLATION OF RULE 23(c) ...... 29

CONCLUSION ............................................................... 37

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) ...................................................................... 30, 31, 35

*Amati v. City of Woodstock*,
176 F.3d 952 (7th Cir. 1999) ........................................................... 35

*Arch Ins. Co. v. Precision Stone, Inc.*,
584 F.3d 33 (2d Cir. 2009) ............................................................... 24

*Bakalar v. Vavra*,
237 F.R.D. 59 (S.D.N.Y. 2006) ..................................................... 24, 25, 26

*Bethea v. Levi Strauss & Co.*,
916 F.2d 453 (8th Cir. 1990) ......................................................... 20, 24

*Carroll v. Blinken*,
42 F.3d 122 (2d Cir. 1994) ............................................................... 18

*Clay v. Am. Tobacco Co.*,
188 F.R.D. 483 (S.D. Ill. 1999) ...................................................... 26

*Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*,
321 F.3d 950 (10th Cir. 2003) ........................................................ 20

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) .......................................................... 25

*DeJulius v. New Eng. Health Care Emps. Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ........................................................ 18

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ......................................................................... 28

*Escott v. BarChris Const. Corp.*,
283 F. Supp. 643 (S.D.N.Y. 1968) ................................................. 32

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) .......................................................... 18

ii

**Page(s)**

*Fogel v. Chestnutt*,
668 F.2d 100 (2d Cir. 1981)................................................................ 20

*Gene & Gene, L.L.C. v. Biopay, L.L.C.*,
624 F.3d 698 (5th Cir. 2010) ........................................................ 22

*H.W. Urban GmbH v. Republic of* Argentina,
No. 02 Civ. 5699 (TPG), 2003 WL 21058254 (S.D.N.Y. May 12, 2003) .... 5

*H.W. Urban GmbH v. Republic of Argentina*,
No. 02 Civ. 5699 (TPG), 2004 WL 307293 (S.D.N.Y. Feb. 17, 2004).......... 5-6, 9-10, 12

*Hecht v. United Collection Bureau, Inc.*,
691 F.3d 218 (2d Cir. 2012)........................................................ 17, 27-28

*Hickory Securities Ltd. v. Republic of Argentina*,
493 F. App'x 156 (2d Cir. 2012) .................................................. *passim*

*In re Fosamax Prods. Liab. Litig.*,
248 F.R.D. 389 (S.D.N.Y. 2008) .................................................. 16, 25, 26

*In re Initial Public Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006)........................................................... 25

*In re J.P. Morgan Chase Cash Balance Litig.*,
255 F.R.D. 130 (S.D.N.Y. 2009) .................................................. 33

*In re Philip Morris Inc. (Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund)*,
214 F.3d 132 (2d Cir. 2000)......................................................... 30, 31, 32, 33

*In re Initial Pub. Offering Sec. Litig. (Miles v. Merrill Lynch & Co.)*,
483 F.3d 70 (2d Cir. 2007)........................................................... 22

*In re Sears Roebuck & Co. Tools Mktg. & Sales Practice Litig.*,
MDL No. 1703, 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007)......................... 26

*In re Simon II Litig.*,
407 F.3d 125 (2d Cir. 2005)......................................................... 17

iii

**Page(s)**

*In re Visa Check/MasterMoney Antitrust Litig. (Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.)*,
280 F.3d 124 (2d Cir. 2001).......................................................................... 36

*In re Vivendi Universal, S.A. Sec. Litig.*,
284 F.R.D. 144 (S.D.N.Y. 2012) ................................................................ 32, 35

*Isaacs v. Sprint Corp.*,
261 F.3d 679 (7th Cir. 2001) ........................................................................ 32

*Kilgo v. Bowman Transp., Inc.*,
576 F. Supp. 600 ............................................................................................ 33

*Kilgo v. Bowman Transp., Inc.*,
789 F.2d 859 (11th Cir. 1986) ...................................................................... 33

*Marcus v. BMW of North America, LLC*,
687 F.3d 583 (3d Cir. 2012)........................................................................ 24-25

*Mclaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008).......................................................................... 13

*Million Air Corp. v. Republic of Argentina*,
No. 04 Civ. 1048 (TPG), 2005 WL 2656126 (S.D.N.Y. Oct. 17, 2005)........ 13

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012).......................................................................... 10

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013).......................................................................... 10

*Parker v. Time Warner Entm't Co., L.P.*,
331 F.3d 13 (2d Cir. 2003)............................................................................ 17

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010).................................................................... *passim*

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
No. 13-3416-cv, 2014 WL 3844155 (2d Cir. Aug. 6, 2014) ......................... 15, 19-20

iv

**Page(s)**

*Stagl v. Delta Air Lines, Inc.*,
117 F.3d 76 (2d Cir. 1997)........................................................... 18

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ........................................................ 18

*United States v. Bell*,
5 F.3d 64 (4th Cir. 1993) ............................................................ 22

*United States v. Ben Zvi*,
242 F.3d 89 (2d Cir. 2001)..........................................16, 19, 20, 22

*United States v. Cruz-Flores*,
56 F.3d 461 (2d Cir. 1995)........................................................... 18

*United States v. Stanley*,
54 F.3d 103 (2d Cir. 1995)......................................... 19, 20, 23

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ...................................................... 29

*Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*,
948 F.2d 1436 (5th Cir. 1991) .................................................... 19

*Weiner v. Snapple Beverage Corp.*,
No. 07 Civ. 8742 (DLC), 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 3,
2010) ............................................................................................ 25

**Rules and Statutes**

23 U.S.C. § 2072 ......................................................................... 34

28 U.S.C. § 2072(b) .................................................................... 13

**Other Authorities**

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (10th ed.
2013) ............................................................................................ 27

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:78 (10th ed.
2013) ............................................................................................ 28

**Page(s)**

7AA Charles Alan Wright et al., *Federal Practice And Procedure Civil* § 1785.4 (3d ed. 2005) ........................................................................ 28

7AA Charles Alan Wright et al., *Federal Practice And Procedure Civil* § 1786 (3d ed. 2005) .......................................................................... 28

18B Charles Alan Wright et al., *Federal Practice & Procedure Jurisdiction* § 4478.3 (2d ed. 1986) ............................................................... 19, 20-21

William B. Rubenstein, *Newberg on Class Actions* § 8.5 (5th ed. 2011)....... 29

## PRELIMINARY STATEMENT

Defendant the Republic of Argentina (the "Republic") appeals from the Orders of the United States District Court for the Southern District of New York (Griesa, J.), dated April 24, 2014, modifying the class definition in eight class actions pursuant to Federal Rule of Civil Procedure 23(c)(1)(C) (the "Orders"). The Orders disregard express instructions from this Court and violate fundamental tenets of Rule 23 and the Due Process Clause of the Fifth Amendment.

The proceedings below followed remands by this Court in *Hickory Securities Ltd. v. Republic of Argentina*, 493 F. App'x 156 (2d Cir. 2012) (summary order) ("*Seijas II*"), and *Seijas v. Republic of Argentina*, 606 F.3d 53 (2d Cir. 2010) ("*Seijas I*"). The basis for reversal in each of these decisions was plaintiffs' failure to identify who fell within the class definition in these bondholder actions for breach of contract in light of the undisputed fact that secondary trading continues in the class bonds, and thus to substantiate their awards of aggregate, class-wide damages. In *Seijas II*, the Court gave plaintiffs a final chance to offer a "reasonably accurate, non-speculative estimate" of aggregate damages. 493 F. App'x at 160. Otherwise, the Court held, plaintiffs must prove damages on an "individual basis." *Id.*

Notwithstanding this clear mandate, and tacitly conceding that they could not provide reasonably accurate aggregate damages calculations, plaintiffs

refused to follow the procedure prescribed by the Court. Instead, plaintiffs moved the district court to expand the class definition to include all holders of beneficial interests in eight series of Republic bonds, regardless of when such interests were acquired, rather than only those holders who held their interests from the filing of the complaint to the entry of judgment, as the classes have always been defined. The district court *rejected* this exact same definition when plaintiffs first proposed it in 2005. Nevertheless, the court now granted plaintiffs' motions in order to "streamline arriving at judgments." Hr'g Tr. at 7:11, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (S.D.N.Y. Feb 21, 2014) (A-3796). This was legal error.

Under plaintiffs' expanded definition, it is impossible for anyone—the defendant, the courts, absent class members, or the plaintiff class representatives—even to purport to identify a single member of a definite class. Such amorphous classes violate Rule 23 and the due process rights of absent class members. The Orders also violate Rule 23 by expanding the definition of the classes *after* the district court made a determination on the merits and found the Republic liable to class members. The Orders should be reversed and vacated, and the cases remanded to the district court for the calculation of damages on an individual basis, as this Court held in *Seijas II*.

2

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over plaintiffs' underlying actions against the Republic under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330 and 1605(a)(1). Following the district court's Orders modifying the class definition and granting class certification, the Republic timely filed petitions for permission to appeal under Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate Procedure 5(a). The Court granted the Republic's petitions on June 18, 2014. The Court has jurisdiction over the Republic's appeals under 28 U.S.C. § 1292(e).

## ISSUES PRESENTED FOR REVIEW

1.     Did the district court err when it modified the class definition under Rule 23(c)(1)(C), rather than conducting the proceedings expressly mandated by this Court?

2.     Do the district court's Orders violate the requirement of ascertainability, due process, and the notice requirements of Rule 23 by certifying classes whose membership cannot as a matter of law be determined during the litigation?

3.     Do the district court's Orders violate Rule 23(c) by expanding the class definition to include new members after a finding of class-wide liability?

3

## STATEMENT OF THE CASE

These consolidated appeals arise from class certification Orders entered by the United States District Court for the Southern District of New York (Griesa, J.) at the behest of class representatives that hold beneficial interests in eight series of Republic securities on which the Republic defaulted following its historic economic collapse in 2001. The proceedings below followed remands in *Seijas II*, 493 F. App'x 156, and *Seijas I*, 606 F.3d 53, each of which vacated awards of aggregate judgments under a class definition certified in August 2005. After this Court's second remand, plaintiffs moved on June 27, 2013 to "modify" the class definition governing these eight cases and start all over again. The district court entered plaintiffs' proposed orders granting their motions on April 24, 2014. SPA-1-16.

## I. THE ORIGINAL CLASS CERTIFICATION ORDERS AND PRIOR DECISIONS BY THE COURT

### A. The *Seijas* Actions and the Court's Decision in *Seijas I*

Plaintiffs commenced these actions in January 2004 when a group of three law firms filed the first of twelve class action complaints, by which they sought to form twelve separate classes, each comprised of owners of beneficial interests in one specified bond series. Plaintiffs proposed a class definition of all "holders" of a class bond, without specifying the date on which such holders would

4

be determined, and moved for class certification beginning in May 2004. The Court granted plaintiffs' motions but rejected plaintiffs' proposed class definition. Consistent with its certification rulings in a separate class action filed by other plaintiffs against the Republic, the Court certified eight class actions defined as persons who continuously held interests in the relevant bond series from the date of the filing of the class complaints through entry of judgment. *See, e.g.*, Order Granting Class Certification, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (Aug. 10, 2005) (A-2009). The remaining four actions were ultimately either denied class certification or withdrawn as class complaints.

The district court imposed the "continuous holder" requirement to deal with the undisputed fact that defaulted Republic debt trades in the secondary market. Without such a requirement, the classes would be "too vaguely defined," presenting a host of problems under Rule 23. *Compare, e.g.*, *H.W. Urban GmbH v. Republic of* Argentina, No. 02 Civ. 5699 (TPG), 2003 WL 21058254, at *1 (S.D.N.Y. May 12, 2003) (denying certification of holder classes as "too vaguely defined," and noting that "it is highly important that the boundaries of the class should be finite and well defined," with class members "reasonably identifiable"), *with H.W. Urban GmbH v. Republic of Argentina*, No. 02 Civ. 5699 (TPG), 2004 WL 307293, at *3 (S.D.N.Y. Feb. 17, 2004) (certifying continuous holder class in part because "persons who buy or sell the bonds after [the filing of the complaint]

5

would not be part of the class").  As a function of the class definition, holders who engaged in any purchase, sale, or transfer of their interests in the bond during the relevant period were automatically excluded from the classes.

Despite the district court's recognition of the problems posed by secondary trading, the court entered aggregate judgments in favor of the continuous holder classes totaling over $2.2 billion based on generalized, hypothetical calculations by plaintiffs that did not make any deduction for debt holders who had not held their bond interests continuously since the filing of the complaints.  *See generally Seijas I*, 606 F.3d at 56, 58.  The Republic appealed the district court's certification of the classes and the award of aggregate judgments. Plaintiffs did not cross-appeal from the district court's rejection of their proposed "all holders" class definition.

On May 27, 2010, this Court in *Seijas I* affirmed the district court's certification of the eight classes under the continuous holder definition, but vacated the aggregate judgments.  The Court held that "[e]stimating gross damages for each of the classes as a whole, without using appropriate procedures," improperly enlarged plaintiffs' rights by allowing them "to encumber property to which they have no colorable claim."  *Seijas I*, 606 F.3d at 58-59.  Accordingly, the Court vacated the judgments and remanded to the district court so that it could, "using the variety of tools available for assistance, consider alternative approaches that [] set

6

damages awards that more closely reflect the losses class members experienced." *Id.* at 59.

### B.     The Court's Decision in *Seijas II*

Following this Court's remand, plaintiffs moved on September 22, 2010 by order to show cause for the entry of new aggregate judgments reflecting the exact same methodology upon which the district court relied when calculating the initial aggregate judgments and that this Court rejected in *Seijas I*. To justify their failure to make deductions for non-continuous holders, plaintiffs offered the declaration of a purported expert, Professor Michael Adler. Professor Adler "conceded that there was trading of bonds in the secondary market throughout and after the 2010 debt exchange offer," and testified that "he could not determine the volume of such trading or identify the bondholders involved." *Seijas II*, 493 F. App'x at 160. According to Professor Adler, in order to calculate the amount of bond interests that had been continuously held, "[y]ou have to ask the people how much they own." Dep. Tr. of Prof. Michael Adler at 84:17-18, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (Oct. 13, 2010) (A-3339). The district court nevertheless entered plaintiffs' proposed aggregate judgments, and the Republic appealed.

This Court again vacated plaintiffs' aggregate judgments, holding that "the district court still has not adequately addressed, much less resolved, . . . the

7

volume of bonds purchased in the secondary market after 2004 that were not tendered or are currently held by opt-outs or other litigants." *Id.* Rather, there was "little difference between the calculation of these aggregate judgments and that of the judgments [the Court] previously vacated in *Seijas I*." *Id.*

Unlike in *Seijas I*, where the Court remanded so the district court could consider "alternative approaches" to calculating damages, the Court in *Seijas II* mandated that the district court "conduct an evidentiary hearing to resolve [the issue of damages]." *Id.* At that hearing, the district court was to:

> (1) consider evidence with respect to the volume of bonds purchased in the secondary market after the start of the class periods that were not tendered in the debt exchange offers or are currently held by opt-out parties or litigants in other proceedings;

> (2) make findings as to a reasonably accurate, non-speculative estimate of that volume based on the evidence provided by the parties; [and]

> (3) account for such volume in any subsequent damage calculation such that an aggregate damage award would 'roughly reflect' the loss to each class.

*Id*. The Court further instructed that if no "reasonably accurate, non-speculative estimate" of aggregate damages could be made, then the district court *must* "determine how to proceed with awarding damages on an individual basis." *Id.* ("Ultimately, if an aggregate approach cannot produce a reasonable approximation of the actual loss, the district court must adopt an individualized approach.").

8

Calculating damages on an individualized basis was an entirely reasonable procedure for the Court to mandate. The only way in which class members, under any scenario, could collect on their claims would be to come forward with documentation establishing ownership of a beneficial interest in class bonds. Conducting this proceeding prior to, rather than after, the entry of judgment therefore would impose no additional hardship on individual plaintiffs while ensuring the accuracy of their judgments. *See id.* at 160 n.2 ("first entering aggregate judgments inconsistent with the foregoing and then moving forward with an individual claims process would not allay our concerns."). The district court itself recognized at the outset of these cases that judgments must be calculated based on individual class members presenting proof of their claims, noting in denying plaintiffs' initial motions for summary judgment that

> plaintiffs have not only failed to provide ownership, but they have not even identified class members who might do so, other than the lead plaintiffs. . . . Surely, when the classes in these actions are well-defined, eligible plaintiffs should submit summary judgment motions with documentation of their bond ownership, and where that documentation is sufficient, summary judgment will be granted.

Order Denying Motions for Summary Judgment at 4, *Seijas v. Republic of Argentina*, No. 04 Civ. 401 (TPG) (Feb. 15, 2006) (A- 2048); *accord H.W. Urban GmbH*, 2004 WL 307293, at *3 (finding that the district court has discretion to

9

"require class members to come forward affirmatively and 'present claims.' . . .
[T]he need to do this . . . is obvious because no judgment can be rendered without
the presentation of such claims.").

## II.    PROCEEDINGS BEFORE THE DISTRICT COURT ON REMAND

After this Court's remand in *Seijas II*, the Republic and plaintiffs
exchanged discovery confirming that neither party had documents showing the
amount of trading in class bonds, although plaintiffs acknowledged that such
trading was occurring.  *See*, *e.g.*, *Seijas II*, 439 F. App'x at 160 (plaintiffs' expert
"conceded that there was trading of bonds in the secondary market throughout and
after the 2010 debt exchange offer"); *accord The Griesa Effect: Argentina's
Defaulted Bonds are at Their Highest Levels*, *Infobae*, Jan. 15, 2013 (A-3738)
(citing Bloomberg as reporting that defaulted Republic bonds have doubled in
price since the Court's October 26, 2012 *pari passu* decision[1]).  The trading on
defaulted Republic debt is further evidenced by the fact that, in the few months
since the district court entered the Orders, other plaintiffs have brought new,
individual suits against the Republic on approximately *$40 million* of beneficial
interests in class bonds.  *See* Am. Compl., *Yellow Crane Holdings, LLC v.
Republic of Argentina*, No. 14 Civ. 5675 (TPG) (S.D.N.Y. Aug. 15, 2014)

---

[1] *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012); *see
also NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013).

10

(plaintiff suing on approximately $21.5 million in class bonds); Am. Compl.,

*Attestor Master Value Fund LP v. Republic of Argentina*, No. 14 Civ. 5849 (TPG)

(S.D.N.Y. Aug 19, 2014) (plaintiff suing on approximately $13.7 million in class

bonds); Compl., *MCHA Holdings, LLC v. Republic of Argentina*, No. 14 Civ. 7637

(TPG) (S.D.N.Y. Sep. 22, 2014) (plaintiff suing on approximately $3.8 million in

class bonds).[2]

       Rather than pursue discovery from third parties who might possess

trading data—likely out of concern that such data would result in inordinately

small or zero-value "aggregate" judgments because of the extensive trading that

had occurred and continues to occur—plaintiffs instead asked the district court by

letter dated June 27, 2013 that they be permitted to seek the "unusual" remedy of

modifying the class definition. Letter from J. Scullion to J. Griesa at 2 (June 27,

2013) (A-3734). In the motions to modify the class definition that plaintiffs

subsequently filed, plaintiffs sought to expand the class definition from individuals

who have held their interest in Republic bonds from the filing of the complaint to

the entry of final judgment, to a class of all holders of beneficial interests in such

_____

[2] Indeed, the impropriety of the judgments vacated in *Seijas I* and *Seijas II* was
established beyond doubt by the fact that, in each instance, after the district court
entered aggregate judgments, new actions were filed on class bond interests that
were already part of those judgments. *See, e.g.*, Compl., *Salinovich v. Republic of
Argentina*, No. 11 Civ. 4223 (TPG) (S.D.N.Y. June 21, 2011).

11

bonds, no matter when those interests were acquired, who hold them on some unspecified date.

The Republic objected on several grounds, including those raised in this appeal. The Republic emphasized to the district court that in each of the ten class actions it had certified against the Republic, the court had required that class members hold their interests from the filing of the complaint until judgment precisely to avoid the legal deficiencies inherent in a fluid and unknowable class membership. *See, e.g.*, *H.W. Urban GmbH*, 2004 WL 307293, at *3 ("persons who buy or sell the bonds after [the filing of the complaint] would not be part of the class"). Indeed, as noted above, the district court *rejected* the very class definition now at issue in this appeal when plaintiffs first proposed it in 2005. *See supra* at 5; Memorandum from J. Griesa to Counsel at 1, *Seijas v. Republic of Argentina*, No. 4 Civ. 400 (TPG) (Apr. 27, 2005) (A-2019) ("the language of the Republic's proposed order granting class certification [under the continuous holder definition] is appropriate").

The Republic further emphasized that the "changed circumstances" plaintiffs relied on as purported justification for modifying the class definition were spurious. Plaintiffs' principal contention below was that the continuous holder definition had become unduly burdensome because (1) the Republic did not possess documents necessary to distinguish between continuous and non-

12

continuous holders; and (2) the aggregate size of the classes may not be estimated. However, plaintiffs have long known that the nature of the global notes on which they sued necessarily prevents the Republic from identifying individual holders. *See, e.g.*, *Million Air Corp. v. Republic of Argentina*, No. 04 Civ. 1048 (TPG), 2005 WL 2656126, at *2 (S.D.N.Y. Oct. 17, 2005) ("The Republic actually issues 'a bond' to a depository. The depository, in some form, issues 'participations' to brokers, who sell 'beneficial interests' to purchasers. These beneficial interests are identified by reference to the underlying bond . . . and the principal amount of the beneficial interest."); Letter from C. Boccuzzi to J. Griesa at 2 (Oct. 12, 2007) (A-3761) (as plaintiffs "are well aware, the Republic does not possess information indicating the purchasers' identities and does not otherwise maintain records from which the identities of class members can be determined."). Further, the law has long been settled that plaintiffs may not estimate their damages simply because they have brought their claims as class actions. *See, e.g.*, *Mclaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008); 28 U.S.C. § 2072(b).[3] Thus, plaintiffs' motions were in reality nothing more than motions for reconsideration of

---

[3] Plaintiffs also offered the meritless argument that the closing of the Republic's 2005 and 2010 Exchange Offers qualified as a "changed circumstance" because permitting class members the ability to exchange their beneficial interests purportedly was the sole reason the Court rejected plaintiffs' holder class definition in the first place. The record does not support this *ipse dixit*, and in any event, the Court's decision in *Seijas II* and the underlying district court judgments were issued *after* the Republic's 2010 Exchange Offer.

13

class certification orders entered nearly a decade ago, based on arguments available to, but not raised by, plaintiffs at the time or on the two prior appeals to this Court.

On February 21, 2014, the district court held a hearing on plaintiffs' motions. The district court did not address any of the issues raised by the Republic, other than to say "I don't see any reason at all why the Court lacks discretion to expand the class definitions." Hr'g Tr. at 7:3-4, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (S.D.N.Y. Feb 21, 2014) (A-3796). The Court further emphasized its belief that modifying the class definition "could streamline arriving at judgments," *id.* at 7:11 (A-3796), notwithstanding the fact that to the extent holders brought individual suits against the Republic or participated in any future exchange offer after final judgment, those judgments would necessarily be overstated, *see id.* at 8:14-9:3 (A-3797). On April 24, 2014, the district court entered written certification Orders granting plaintiffs' motions identical to those proposed by plaintiffs. SPA-1-16. This appeal followed.

Shortly thereafter, plaintiffs moved for preliminary injunctions enjoining the Republic from servicing certain performing debt unless the Republic pays plaintiffs approximately $700 million. *See, e.g.*, Proposed Order ¶ 2(a), *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (S.D.N.Y. July 24, 2014) (requiring "Ratable Payment" to plaintiffs "calculated based on the maximum

14

potential size" of the classes); Pl. Reply Mem. at 4, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (S.D.N.Y. Sep. 12, 2014) (arguing that the Republic must pay plaintiffs an estimated $700 million). This is *precisely* the amount of the aggregate judgments vacated by this Court in *Seijas II*. Thus, plaintiffs have once again sought to use the class action mechanism to demand payment of amounts "to which they have no colorable claim." *Seijas I*, 606 F.3d at 59.

## SUMMARY OF THE ARGUMENT

The Orders should be reversed and vacated, and the cases remanded to the district court for individualized damages proceedings, for three reasons.

*First*, the district court violated the mandate rule because on remand it did not conduct the proceedings ordered by this Court. *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, No. 13-3416-cv, 2014 WL 3844155, at *6 (2d Cir. Aug. 6, 2014). In *Seijas II*, the Court unequivocally instructed plaintiffs and the district court to make one final attempt at accurately calculating aggregate damages, after failing twice before. 493 F. App'x at 160. Otherwise, the Court ordered, damages *must* be calculated on an individualized basis. *Id.* Rather than comply with these instructions, plaintiffs obtained certification of classes with an expanded definition, and in doing so did not even address their long-standing failure to account for secondary trading identified by the Court in its *Seijas* decisions.

15

The Orders also violate the mandate rule's prohibition of reopening on remand issues that plaintiffs failed to challenge on appeal. *See United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001). When these class actions were first certified in August 2005, the district court adopted a continuous holder class definition, rejecting the "holder" class proposed by plaintiffs. Plaintiffs made the tactical decision not to cross-appeal this class definition throughout both *Seijas I* and *Seijas II*, notwithstanding their clear incentive to do so. Having twice foregone appeal, plaintiffs were barred from moving the district court to reconsider its class certification orders and start all over again with the same definition the district court rejected over nine years ago.

*Second*, the Orders violate Rule 23 by certifying classes that are unascertainable and defined in a way that makes sufficient notice to absent class members impossible. Plaintiffs' classes are amorphous and ever-changing, because they are defined solely by who holds a beneficial interest in the relevant securities at some unspecified time, and because secondary trading indisputably continues in class bonds. As a result, neither the class representatives, the Court, nor the Republic will be able to determine the membership of the classes, in violation of the requirement that classes be ascertainable. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395-96 (S.D.N.Y. 2008) ("class membership must be ascertainable prior to the end of the action").

16

Further, absent class members who purchase class bonds after the notice and opt-out period—including on the day judgments are entered—will be bound by the class regardless of whether they received notice, in violation of the notice and opt-out requirements of the Due Process Clause of the Fifth Amendment and Rule 23. *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) ("Absent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages.").

*Third*, the new class definition violates Rule 23(c) by permitting new class members to enter the litigation (or not) after the district court reached a class-wide liability determination on the merits. Rule 23(c)—which was amended in 1966 to prevent this so-called "one-way intervention"—precludes this result.

## STANDARD OF REVIEW

Because each of the issues presented by this appeal concerns errors of law by the district court, the Court's standard of review is *de novo*. The Court reviews *de novo* a district court's conclusions of law that have informed its class certification decision. *See Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 18 (2d Cir. 2003); *see also In re Simon II Litig.*, 407 F.3d 125, 132 (2d Cir. 2005) (district court abuses its discretion when its decision rests on error of law, such as application of wrong legal principle).

17

The Court also reviews *de novo* whether a district court's order on remand complies with the Court's mandate. *Carroll v. Blinken*, 42 F.3d 122, 126 (2d Cir. 1994); *see also Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997) ("[B]ecause the district court has no discretion in carrying out the mandate, the appellate court retains the authority to determine whether the terms of the mandate have been scrupulously and fully carried out." (internal quotation marks omitted)).

Finally, the Court reviews *de novo* whether a district court's order complies with the notice rights of absent class members under the Due Process Clause. *United States v. Cruz-Flores*, 56 F.3d 461, 463 (2d Cir. 1995) ("We review the district court's application of constitutional due process standards de novo."); *see also Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (adequacy of notice under Due Process Clause and Rule 23 reviewed *de novo*); *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005) (same); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (same).

18

**ARGUMENT**

## I.  THE CLASS CERTIFICATION ORDERS VIOLATE THE MANDATE RULE

The mandate rule is a subsidiary of the law of the case doctrine that has two independent requirements.  *First*, the mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court."  *Ben Zvi*, 242 F.3d at 95 (emphasis in original) (internal quotation marks omitted).  The rule dictates that when an appellate court remands an action for further proceedings, those "further proceedings must be had."  18B Charles Alan Wright et al., *Federal Practice & Procedure Jurisdiction* § 4478.3 (2d ed. 1986); *see also Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 948 F.2d 1436, 1442-43 (5th Cir. 1991) (finding error and reversing judgment due to district court's failure to decide questions the court of appeals directed it to decide); *cf. United States v. Stanley*, 54 F.3d 103, 107 (2d Cir. 1995) (mandate rule "bars the district court from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals" (internal quotation marks omitted)).  Where, as here, "the mandate limits the issues open for consideration on remand, the district court ordinarily may not deviate from the specific dictates or spirit of the mandate by

19

considering additional issues on remand." *Sompo Japan Ins. Co. of Am.*, 2014 WL 3844155, at *6.

Second, the mandate rule generally prohibits a district court from reopening on remand an issue that "was ripe for review at the time of an initial appeal but was nonetheless foregone." *Ben Zvi*, 242 F.3d at 95; *accord Stanley*, 54 F.3d at 107. "It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981); *see also Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 457 (8th Cir. 1990) (plaintiff's failure to cross appeal "limited the appellate court's options to leaving the district court's judgment intact or decreasing the district court's award. Therefore, on remand, the district court was subject to the same limits as the appellate court and had no authority to grant . . . [plaintiff] further relief."); *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 992 (10th Cir. 2003) ("[A] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." (internal quotation marks omitted)). Thus, the law is well-settled that a district court is not "permitted to reconsider its own

20

rulings made before appeal and not raised on appeal."  18B Wright, *Federal Practice & Procedure Jurisdiction* § 4478.3.

The district court's certification of plaintiffs' classes under an expanded class definition—notwithstanding the Court's express instructions in *Seijas II* and the procedural posture in which they were issued—violates both prongs of the mandate rule.

This Court remanded these cases to the district court with specific instructions to conduct an evidentiary hearing on damages, and that "if no reasonably accurate, non-speculative estimate" of aggregate class-wide damages could be made, then "the district court *must* adopt an individualized approach" to calculating damages.  *Seijas II*, 493 F. App'x at 160 (emphasis added); *see also id.* at 160 n.2 ("first entering aggregate judgments inconsistent with the foregoing and then moving forward with an individual claims process would not allay our concerns").  Plaintiffs declined to proffer any evidence from which the amount of secondary trading in the relevant bond series could be determined, as required by *Seijas I* and *Seijas II*, in order to establish that aggregate damages could be calculated accurately.  Pursuant to the Court's mandate, the district court was therefore required to determine damages on an individual basis.  *Id*. at 160.

Notwithstanding the Court's instructions, the district court concluded that it had discretion under Federal Rule of Civil Procedure 23(c)(1)(C) to expand

21

the class definition. However, the law is precisely to the contrary. As the Court explained in *In re Initial Public Offering Securities Litigation (Miles v. Merrill Lynch & Co.)*, "a district court's discretion to 'alter or amend a class action ruling before final judgment' cannot be exercised in conflict with an appellate ruling." 483 F.3d 70, 73 (2d Cir. 2007) (brackets and internal citation omitted); *see also Gene & Gene, L.L.C. v. Biopay, L.L.C.*, 624 F.3d 698, 703 (5th Cir. 2010) (discretion to modify class applies only in "areas not covered by higher court's mandate" (internal quotation marks omitted)). The district court was therefore required to proceed by calculating damages on an individualized basis. Its decision instead to certify eight wholly-new classes was error, particularly given that the new class definition violates basic principles of class action law. *See infra* Points II-III.

Further, the certification orders violate the mandate rule's prohibition against reopening on remand issues that plaintiffs failed to challenge on appeal. *See Ben Zvi*, 242 F.3d at 95; *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). These cases have come to this Court on two prior occasions, and in each plaintiffs elected to defend their aggregate damages calculations under the continuous holder definition approved by the district court in 2005. Having twice decided not to appeal the district court's rejection of their proposed "holder" definition, plaintiffs are barred from circumventing the Court's mandate by moving the district court to

22

effectively reconsider its underlying class certification orders from nine years ago, and to start all over again under a new—and unworkable—class definition. *See Stanley*, 54 F.3d at 107 ("Because [defendant] decided on his first appeal to forego any argument concerning the [guidelines] enhancement, the mandate rule prohibited the district court from reopening the issue.").

   Plaintiffs argued below and in opposition to the Republic's Rule 23(f) petition that they are absolved from the second prong of the mandate rule because they obtained judgments under the continuous holder class definition, and thus had no incentive to appeal. Although nothing in the record suggests that the district court accepted this argument, it is in any event meritless. Plaintiffs ignore that the district court ruled against them in 2005 when refusing to certify the very same holder classes that are the subject of these appeals. Memorandum from J. Griesa to Counsel at 1, *Seijas v. Republic of Argentina*, No. 4 Civ. 400 (TPG) (Apr. 27, 2005) (A-2019) ("the language of the Republic's proposed order granting class certification [under the continuous holder definition] is appropriate"); Pl. Proposed Order with Respect to Notice at 2-3, *Seijas v. Republic of Argentina*, No. 4 Civ. 400 (TPG) (Apr. 18, 2005) (A-3769-3770) (defining class to be "all holders" of the relevant series of Republic bonds). In so doing, the district court necessarily excluded non-continuous holders from plaintiffs' classes, reducing the maximum potential size of plaintiffs' class judgments and placing on plaintiffs the burden to

23

account for and deduct the beneficial interests of holders who bought or sold those interests after 2004.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 40 (2d Cir. 2009) (plaintiff bears the burden of proving damages).

Nevertheless, plaintiffs made the tactical decision to pursue their actions under the continuous holder definition.  Plaintiffs are accordingly constrained by that decision, and may not seek to relitigate a class definition certified nearly a decade ago.  *See Bethea*, 916 F.2d at 456 (Plaintiff "claims that he could not cross-appeal since he was completely satisfied with the district court's judgment.  This argument is without merit.  Parties who receive all the relief sought are prohibited from appealing, not parties who are satisfied with the final judgment.").

## II.   A CLASS WHOSE MEMBERSHIP IS INDETERMINABLE VIOLATES THE REQUIREMENT OF ASCERTAINABILITY AND THE DUE PROCESS RIGHTS OF ABSENT CLASS MEMBERS

### A.   Plaintiffs' Classes Are Unascertainable

District courts within this Circuit and numerous Courts of Appeals agree that "Rule 23 contains an implicit requirement that the proposed class be precise, objective and presently ascertainable."  *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (internal quotation marks omitted); *accord, e.g.*, *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) ("Many courts and commentators have recognized that an essential prerequisite of a class action,

24

at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."); *see also In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 30, 45 (2d Cir. 2006) (recognizing "the implied requirement of ascertainability" as distinct from the predominance requirement of Rule 23(b)(3)). To be ascertainable, "the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742 (DLC), 2010 U.S. Dist. LEXIS 79647, at *40 (S.D.N.Y. Aug. 3, 2010). Critically, "[w]hile class members need not be ascertained prior to certification, they must be ascertainable at some stage of the proceeding." *Bakalar*, 237 F.R.D. at 64; *accord In re Initial Public Offerings Sec. Litig.*, 471 F.3d at 45. Thus, "class membership must be ascertainable prior to the end of the action." *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395-96 (S.D.N.Y. 2008).

By removing the continuous holder requirement from the class definition and certifying classes of all holders, no matter when they acquired their interest, the Orders on their face violate the requirement of ascertainability. As the record on appeal and the *Seijas* decisions make clear, the bonds on which plaintiffs

25

have brought suit are freely negotiable instruments that are regularly traded on the secondary market. *See, e.g.*, *Seijas II*, 493 F. App'x at 158; *see also supra* at 7, 10. The membership of the newly redefined classes will therefore be amorphous, consisting of ever-changing populations of holders that cannot, and will not, be determinable prior to the end of these actions (or even after). The law is well-settled that the certification of such classes is categorically barred by the requirement that class membership be definite and ascertainable. *See In re Fosamax*, 248 F.R.D. at 395-96; *Bakalar*, 237 F.R.D. at 64; *see also In re Sears Roebuck & Co. Tools Mktg. & Sales Practice Litig.*, MDL No. 1703, 2007 WL 4287511, at *4 (N.D. Ill. Dec. 4, 2007) (class of all purchasers of Craftsman tools not made in the USA "unidentifiable" because definition contained "no time limitation or indication of what the class period would be"); *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999) (finding unascertainable class of all underage smokers because "a new set of plaintiffs would be added to the class each day," and thus "[a]t no time during this case would the exact membership of the class be ascertainable").

Plaintiffs claimed below that they had met their burden on ascertainability because the classes purportedly are defined by objective criteria. As an initial matter, there is nothing "objective" about a class definition that permits class membership to change in perpetuity. But in any event,

ascertainability requires not only an objective definition, but that the class be defined temporally such that class membership may be *presently* and readily identifiable. *See supra* at 24-26; *see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (10th ed. 2013) (noting both objectivity requirement and requirement that the class be defined by an appropriate time period). The Orders indisputably fail to meet this prerequisite to certification, as neither the class representatives, the courts, absent class members, nor the Republic are capable of determining class membership. To date, and after a decade of litigation, no member of these classes other than the named, purported class representatives has ever been identified.

## B. Sufficient Notice to Absent Class Members Is Impossible Under the Expanded Class Definition

The district court's certification of plaintiffs' "holder" classes is also improper as a matter of law because providing sufficient notice to ever-changing, amorphous classes is impossible. Federal Rule of Civil Procedure 23(c)(2) requires that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed R. Civ. P. 23(c)(2)(B). This notice requirement is neither discretionary nor required solely by the Federal Rules: "[a]bsent class members have a due process

27

right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages."  *Hecht*, 691 F.3d at 222; *see also* 7AA Charles Alan Wright et al., *Federal Practice And Procedure Civil* § 1785.4 (3d ed. 2005) ("The court should exercise its power to alter or amend its class-action determination with great care, taking into account the due-process rights of the absent class members.").  At minimum, notice procedures must provide class members with sufficient time to determine whether to opt out of the class.  Wright, *Federal Practice And Procedure Civil* § 1786; McLaughlin, *McLaughlin on Class Actions* § 5:78 (courts ordinarily require "opt-out periods of between 30 and 60 days from the time the notice is sent"); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) ("[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

The right to notice and to opt-out under the Due Process Clause and Rule 23 plainly cannot be met by fluid classes that are indeterminate and indeterminable, regardless of the methods of notice used by plaintiffs.  A person who acquires an interest in class bonds after the end of the notice and opt-out period, including on the day judgment is entered (and even after), will be a member of the class as defined by the Orders and bound by the judgment, whether

28

or not the transferee received notice and the opportunity to opt-out and whether or

not the transferee wished to be a class member. A class definition that precludes

absent class members from receiving adequate notice and a right to opt-out violates

their due process rights as well as Rule 23 as a matter of law. *See, e.g.*, *Valentino v.*

*Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (decertifying class in part

because "many potential members of the classes cannot yet know if they are part of

the class. We therefore have serious due process concerns about whether adequate

notice under Rule 23(c)(2) can be given to all class members to enable them to

make an intelligent choice as to whether to opt out."); William B. Rubenstein,

*Newberg on Class Actions* § 8.5 (5th ed. 2011) ("[A]s to whether certification

notice is necessary, the rule is absolute: certification of a (b)(3) class requires that

notice be given."). For this reason too the Orders must be vacated.

## III. THE CLASS CERTIFICATION ORDERS IMPERMISSIBLY EXPAND THE CLASSES AFTER THE DISTRICT COURT DETERMINED LIABILITY IN VIOLATION OF RULE 23(c)

A district court's authority to alter or amend a class definition does

not as a matter of law permit plaintiffs to expand the class definition nearly a

decade after these classes were first certified and *after* class-wide liability has been

determined. To the contrary, Rule 23(c) prohibits such a result.

Prior to 1966, Rule 23 allowed for so-called spurious class actions for

money damages (actions in which class members had no preexisting common legal

29

interest) so long as there was "a common question of law or fact affecting the

several rights and a common relief [was] sought." *Am. Pipe & Const. Co. v. Utah*,

414 U.S. 538, 545 (1974) (internal quotation marks omitted). But the rule

contained no mechanism for determining in advance of final judgment who were

members of the class and thus bound by the judgment. *Id.* at 545-46. Instead,

class actions were "merely . . . an invitation to become a fellow traveler in the

litigation, which might or might not be accepted" at the potential class plaintiffs'

convenience. *Id.* at 546 (internal quotation marks omitted).

The shortcomings of this framework were readily apparent. Potential

class members "could in some situations await developments in the trial or even

final judgment on the merits in order to determine whether participation would be

favorable to their interests." *Id.* Moreover, the failure of a district court to decide

class certification "early in the proceedings" had the potential to create "an

atmosphere of confusion" and make "appellate review more difficult." *In re Philip

Morris Inc. (Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund)*, 214 F.3d

132, 134 (2d Cir. 2000) (internal quotation marks omitted). Accordingly, Rule 23

underwent substantial revision in 1966 to ensure that class certification decisions

would be made prior to decisions on the merits and that new class members would

not be permitted to enter the litigation after liability had been determined. *See Am.

Pipe*, 414 U.S. at 546-49 ("The 1966 amendments were designed, in part,

30

specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.").

Rule 23(c), as amended, provided that determinations with regard to class certification must be made "as soon as practicable," *id.* at 548, with notice procedures making clear to potential class members in Rule 23(b)(3) classes that they will be bound by all judgments unless they request exclusion, Fed. R. Civ. P. 23(c)(2) (SPA-18), and with Rule 23(b)(3) judgments—whether favorable or unfavorable to the class—specifying to whom notice was provided and whom the court finds to be members of the class, Fed. R. Civ. P. 23(c)(3) (SPA-19). Thus, as explained by the Advisory Committee, "one-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class." Advisory Committee Notes to 1966 Amendment to Rule 23(c)(3) (SPA-31); *accord In re Philip Morris Inc.*, 214 F.3d at 135 (in light of amendments to Rule 23, "it is difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits" (internal quotation marks omitted)). These provisions remain in effect today.[4]

---

[4] In 2003, Rule 23(c)(1) was revised to state that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by

31

In light of Rule 23's amendments, district courts in this Circuit have expressly refused to expand a class after a determination of liability. *See In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 149 (S.D.N.Y. 2012) (plaintiff may not expand a class after the court has determined liability); *Escott v. BarChris Const. Corp.*, 283 F. Supp. 643, 706 (S.D.N.Y. 1968) (rejecting plaintiffs' request to give notice to members of prospective class after determination of liability); *see also Isaacs v. Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001) (granting Rule 23(f) petition and reversing grant of class certification in part because certification order violated rule against one-way intervention); *cf. In re Philip Morris Inc.*, 214 F.3d at 135 (instructing district court to decide class certification prior to trial to "abate" the "specter of a risk-free intervention"). By contrast, neither the district court nor plaintiffs cited a single case that has permitted a post-liability expansion of a Rule 23(b)(3) damages class since Rule 23's amendment in 1966, and the Republic is aware of none.

---

order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1) (SPA-18). As explained by the Advisory Committee Notes to the 2003 Amendments, the amendment's purpose was to provide flexibility such that the district court could efficiently reach a class certification decision, including by gathering "information necessary to make the certification decision," permitting discovery on issues relevant to class certification, or reviewing a trial plan. Advisory Committee Notes to 2003 Amendment to Rule 23(c)(1) (SPA-33-34). It did not reinstitute one-way intervention.

Instead, plaintiffs relied below on case law permitting *pre*-liability expansion of a class definition, *see, e.g.*, *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 131-33 (S.D.N.Y. 2009),[5] and the general authority of a district court to "modify" a class definition prior to judgment under Rule 23(c)(1)(C). However, that authority does not include expanding the class definition *after* a decision on the merits. As the Advisory Committee expressly stated in its Notes to the 2003 Amendments, "[t]he authority to amend an order under Rule 23(c)(1) before final judgment *does not* restore the practice of 'one-way intervention' that was rejected by the 1966 revision of Rule 23." Advisory Committee Notes to 2003 Amendment to Rule 23(c)(1) (SPA-34) (emphasis added). Thus, while certain modifications to a class may occur after a finding of liability, including "[d]ecertification," *see id.* (SPA-34), it was legal error for the

---

[5] Plaintiffs also relied below on an out-of-circuit decision permitting post-liability expansion of a class seeking declaratory and injunctive relief under Rule 23(b)(2). *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 877-78 (11th Cir. 1986). Not only does this decision not address one-way intervention, it is inapposite, as Rule 23(c)'s bar against one-way intervention was developed to address damages classes under Rule 23(b)(3). *Compare In re Philip Morris Inc.*, 214 F.3d at 135 (noting significance of damages in Rule 23(b)(3) classes when interpreting Rule 23(c)(1)(A)'s instruction on timing of class certification orders) *and* Fed. R. Civ. P. 23(c)(2)-(3) (SPA-18-19) (providing additional requirements for Rule 23(b)(3) classes), *with Kilgo v. Bowman Transp., Inc.*, 576 F. Supp. 600, 602 (N.D. Ga. 1984) (granting class alleging sex discrimination in violation of Title VII of the Civil Rights Act predominantly equitable relief and enjoining defendants from engaging in discriminatory activities).

33

district court to expand class membership after the Republic's class-wide liability had been adjudicated.

Plaintiffs do not dispute, nor could they, that Rule 23 prohibits one-way intervention. *Cf.* 23 U.S.C. § 2072 (Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right"). Instead, plaintiffs' position is that because there was never any "risk" that newly eligible class members would lose on the merits in their suit against the Republic, the Republic has failed to establish prejudice, and thus the doctrine did not apply.

As an initial matter, there is no textual basis in Rule 23 for plaintiffs' claim that the bar on one-way intervention only applies when class actions face a certain degree of risk. To the contrary, as noted above, Rule 23(c)(1)-(3) requires as a matter of law that class certification decisions and notice occur early in the proceeding such that all eligible class members are either excluded from the class or bound by the court's liability determination. *See supra* at 31. Nowhere in Rule 23 is there a requirement that a defendant establish that plaintiffs faced some unspecified level of risk in order to be entitled to these procedural safeguards.

It is therefore unsurprising that when discussing Rule 23(c)'s prohibition on new class members intervening in damages class actions after a determination on the merits, courts do not even mention plaintiffs' "theory." As explained by the Supreme Court:

34

> potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation 'as soon as practicable after the commencement' of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class. Thereafter they are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse.

*Am. Pipe*, 414 U.S. at 549; *see also, e.g.*, *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) ("The rule bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment."); *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. at 149 ("Under the current policy against one-way intervention, it would be improper to let plaintiffs opt into a class after a trial on the merits has concluded.").

Moreover, to the extent plaintiffs rely on the fact that the Republic has not contested liability for its 2001 debt default, that supports the wisdom of proceeding to calculate damages on an individualized basis as the Court instructed, *Seijas II*, 493 F. App'x at 160, not expanding the class definition nearly a decade after the classes were certified. A primary benefit of class actions is to establish a defendant's liability to the class. Courts thus go to great lengths to certify classes even where potential difficulties during the damages phase may caution against

35

certification.  *See, e.g.*, *Seijas I*, 606 F.3d at 57; *In re Visa Check/MasterMoney Antitrust Litig. (Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.)*, 280 F.3d 124, 138-41 (2d Cir. 2001).  In such instances, the Court has made clear the variety of procedures available to district courts, including "appointing a magistrate judge or special master to preside over individual damages proceedings" or "decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages."  *In re Visa Check*, 280 F.3d at 141. Rule 23 thus contemplates individualized damages procedures, which can be readily applied to a properly defined class, and does *not* support plaintiffs' demand for a class definition that the Rule otherwise flatly prohibits.

Individualized damages procedures are particularly appropriate here. *Seijas II*, 493 F. App'x at 160.  Plaintiffs have effectively conceded that they are either unable or unwilling to provide an accurate calculation of aggregate damages, and under any class definition, class members will only be able to collect on their claims by coming forward individually and presenting proof of ownership. Conducting this proceeding now will avoid the entry of improper aggregate judgments already rejected by this Court while complying with the requirements of Rule 23.

36

## CONCLUSION

For the foregoing reasons, this Court should reverse and vacate the

Orders and remand to the district court to calculate damages on an individualized

basis under the continuous holder class definition.


Dated: New York, New York
      October 1, 2014

             CLEARY GOTTLIEB STEEN & HAMILTON LLP

             By: _____/s/ Carmine Boccuzzi_____
                   Jonathan I. Blackman (jblackman@cgsh.com)
                   Carmine D. Boccuzzi (cboccuzzi@cgsh.com)


*Of Counsel:*

Daniel J. Northrop         One Liberty Plaza
Jacob H. Johnston        New York, New York 10006
                     (212) 225-2000

             Attorneys for the Republic of Argentina

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.    This brief complies with Fed. R. App. P. 32(a)(7)(B)(i), because it contains 8,621 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  New York, New York
        October 1, 2014

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:  _____/s/ Carmine Boccuzzi_____
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

38