# 14-2104-cv(L), 14-2105-cv(CON), 14-2106-cv(CON), 14-2107-cv(CON), 14-2108-cv(CON), 14-2109-cv(CON), 14-2111-cv(CON), 14-2112-cv(CON)

# United States Court of Appeals

*for the*

# Second Circuit

EDUARDO PURICELLI, RUBEN CHORNY, HICKORY SECURITIES, LTD.,
RODOLFO VOGELBAUM, ELIZABETH ANDREA AZZA, CLAUDIA
FLORENCIA VALLS, SILVIA SEIJAS, HEATHER M. MUNTON, THOMAS
L. PICO ESTRADA, EMILIO ROMANO, RUBEN WEISZMAN, ANIBAL
CAMPO, MARIA COPATI and CESAR RAUL CASTRO,

*Plaintiffs-Appellees,*

– v. –

REPUBLIC OF ARGENTINA,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLEES

JENNIFER R. SCULLION
M. TODD MOBLEY
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3000

MICHAEL DIAZ, JR.
CARLOS F. GONZALEZ
MARTA COLOMAR-GARCIA
DIAZ REUS & TARG LLP
100 South East Second Street, Suite 3400
Miami, Florida 33131
(305) 375-9220

*Attorneys for Plaintiffs-Appellees*
*(For Continuation of Appearances See Inside Cover)*

SAUL ROFFE
LAW OFFICES OF SAUL ROFFE, ESQ.
52 Homestead Circle
Marlboro, New Jersey 07746
(732) 375-9220

*Attorneys for Plaintiffs-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Plaintiff-Appellee Hickory Securities, LTD certifies for purposes of Rule 26.1 that:

Hickory Securities, LTD is a non-governmental corporate entity with no parent corporation and no publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

JURISDICTIONAL STATEMENT ......................................................1

ISSUES PRESENTED FOR REVIEW ...............................................1

STATEMENT OF THE CASE.............................................................2

    A. Original Class Certification and Summary Judgment ................2

    B. The *Seijas I* Appeal ...............................................................3

    C. The *Seijas II* Appeal...............................................................4

    D. Proceedings on Remand ..........................................................5

SUMMARY OF THE ARGUMENT ...................................................9

STANDARD OF REVIEW .................................................................13

ARGUMENT ......................................................................................13

I. MODIFICATION OF THE CLASS DEFINITIONS DID NOT VIOLATE
THE MANDATE RULE ...................................................................13

II. THE MODIFIED CLASSES ARE ASCERTAINABLE AND PROTECT
DUE PROCESS RIGHTS..................................................................19

    A. The Holder Classes are Ascertainable .....................................19

    B. The Holder Classes Comport With Due Process ......................24

III. MODIFICATION OF THE CLASS DEFINITIONS AFTER
SUMMARY JUDGMENT DID NOT VIOLATE RULE 23 .................29

CONCLUSION ...................................................................................34

CERTIFICATE OF COMPLIANCE....................................................36

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Aho v. Americredit Fin. Servs., Inc.*,
  2012 WL 273763 (S.D. Cal. Jan. 31, 2012) .....................................................30

*Bakalar v. Vavra*,
  237 F.R.D. 59 (S.D.N.Y. 2006) ..................................................................21, 24

*Bethea v. Levi Strauss & Co.*,
  916 F.2d 453 (8th Cir. 1990) ..........................................................................17

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
  97 N.Y.2d 456 (2002) ....................................................................................20

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
  280 F.R.D. 408 (N.D. Ill. 2012)..............................................................*passim*

*Bowers v. Windstream Kentucky East, LLC*,
  2012 WL 216616 (W.D. Ky. Jan. 24, 2012) ....................................................30

*Clay v. America Tobacco Co.*,
  188 F.R.D. 483 (S.D. Ill. 1999) ......................................................................21

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)....................................................................................15

*Concrete Works of Colo., Inc. v. City & Cnty. Of Denver*,
  321 F.3d 950 (10th Cir. 2003) ........................................................................18

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) .............................................................................21

*Dukes v. Wal-Mart Stores, Inc.*,
  2012 WL 4329009 (N.D. Cal. Sept. 21, 2012)................................................15

*Escott v. BarChris Constr. Corp.*,
  283 F. Supp. 643 (S.D.N.Y. 1968) .................................................................31

*Estate of Thompson v. Comm'r*,
  370 F. App'x 141 (2d Cir. 2010) ....................................................................13

*Fogel v. Chestnutt*
  668 F.2d 100 (2d Cir. 1981) ............................................................18

*Furlong v. Shalala,*
  238 F.3d 227 (2d Cir. 2001) .....................................................11, 16

*Gene & Gene, LLC v. Biopay, LLC,*
  624 F.3d 698 (5th Cir. 2010) ..........................................................16

*Geneva Rock Prods. Inc. v. United States,*
  107 F. Cl. 166 (Fed. Cl. 2012).........................................................29

*Glaberson v. Comcast Corp.,*
  295 F.R.D. 95 (E.D. Pa. 2013).........................................................15

*Gortat v. Capala Bros., Inc.,*
  2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) .....................................19

*Hickory Sec., Ltd. v. Republic of Argentina,*
  493 F. App'x 156 (2d Cir. 2012) ..............................................*passim*

*Holmes v. Continental Can Co.,*
  706 F.2d 1144 (11th Cir. 1983) .......................................................29

*In re Adelphia Commc'ns. Corp. Sec. & Derivatives Litig.,*
  271 F. App'x 41 (2d Cir. 2008) .................................................13, 24

*In re BGI,*
  476 B.R. 812 (Bankr. S.D.N.Y. 2012).........................................23, 25

*In re Fosamax Prods. Liab. Litig.,*
  248 F.R.D. 389 (S.D.N.Y. 2008) ...............................................21, 24

*In re Initial Pub. Offering Sec. Litig.,*
  483 F.3d 70 (2d Cir. 2007) ...............................................10, 13, 14

*In re Initial Pub. Offerings Sec. Litig.,*
  471 F.3d 24 (2d Cir. 2006) ..........................................13, 14, 24

*In re Kellogg Square P'ship,*
  160 B.R. 332 (Bankr. D. Minn. 1993) ............................................28

*In re OBT Partners,*
  214 B.R. 863 (Bankr. N.D. Ill. 1997) ............................................28

*In re Philip Morris Inc.(Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund)*,
   214 F.3d at 135 ..................................................................31, 32

*In re Sears Roebuck & Co. Tools Mktg. & Sales Practice Litig.*,
   2007 WL 4287511 (N.D. Ill. Dec. 4, 2007)........................................21

*In re Vivendi*,
   284 F.R.D. 144 (S.D.N.Y. 2012) .......................................................31

*Isaacs v. Sprint Corp.*,
   261 F.3d 679 (7th Cir. 2001) ............................................................31

*Jeffries v. Pension Trust Fund*,
   2007 WL 2454111 (S.D.N.Y. Aug. 20, 2007)...............................19, 23

*Jermyn v. Best Buy Stores, L.P.*,
   2010 U.S. Dist. LEXIS 130682 (S.D.N.Y. Dec. 6, 2010) ................25

*Kilgo v. Bowman Transp., Inc.*,
   576 F. Supp. 600 (N.D. Ga. 1984) ..................................................29

*Kilgo v. Bowman Transp., Inc.*,
   789 F.2d 859 (11th Cir. 1986) ........................................................29

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ............................................................16

*Maxwell v. Toys R Us*,
   2011 WL 9373596 (Cal. Super. July 29, 2011)................................22

*NML Capital, Ltd. v. Rep. of Arg.*,
   727 F.3d 230 (2d Cir. 2013). ............................................................8

*Parker v. Time Warner Entm't. Co. L.P.*,
   331 F.3d 13 (2d Cir. 2003) ..............................................................13

*Postow v. OBA*,
   627 F.2d 1370 (D.C. Cir. 1980) .......................................................30

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ......................................................*passim*

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   2013 WL 4067116 (E.D.N.Y. Aug. 7, 2013) ...................................19

*Sompo Japan Ins. Co. of Am. v. Norfolk Southern Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014) ............................................................... 15

*United States v. Bell*,
    54 F.3d 64 (4th Cir. 1993) .................................................................. 18

*United States v. Ben Zvi*,
    242 F.3d 89 (2d Cir. 2001) ................................................................. 18

*United States v. Brennan*,
    650 F.3d 65 (2d Cir. 2011) ................................................................. 14

*United States v. Stanley*,
    54 F.3d 103 (2d Cir. 1995) ................................................................. 18

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) .............................................................. 28

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................. 15, 29

*White v. Bowen*,
    116 F.R.D. 12 (S.D.N.Y. 1987) .......................................................... 29

## JURISDICTIONAL STATEMENT

Plaintiffs do not dispute that this Court granted Argentina's Petition under Federal Rule of Civil Procedure 23(f) for review of the District Court's Orders in these eight actions modifying the class definitions and certifying the classes as modified (the "Class Modification Orders"), and that this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(e).

## ISSUES PRESENTED FOR REVIEW

1.     Did this Court's mandate in *Seijas II* strip the District Court of its authority and discretion under Rule 23(c)(1)(C) to modify the class definition when the only question addressed in *Seijas II* was how to calculate damages under the prior class definition?

2.     Does the modified class definition satisfy the ascertainability requirement of Rule 23 and comport with Due Process where the class is defined by the objective fact of whether someone holds the bonds at issue and where notice will be given through well-established mechanisms?

3.     Do the Class Modification Orders comply with Rule 23(c) where no final judgments have been entered and where there is no "one-way intervention" issue because Argentina has never contested that it is liable to all bondholders, whether they were members of the original "continuous holder" class or not?

## STATEMENT OF THE CASE

### A. Original Class Certification and Summary Judgment

In 2001, Argentina repudiated its foreign debt obligations, including the eight series of bonds at issue here (the "Class Bonds"). *Seijas v. Republic of Argentina*, 606 F.3d 53, 55 (2d Cir. 2010) ("*Seijas I*"). Argentina has never contested its liability to holders of the Class Bonds. *Id.* at 56-57.

Plaintiffs sued in eight actions (one per bond series) to recover the principal amounts of the Class Bonds, as well as interest, on behalf of themselves, as well as all holders of the Class Bonds. *See* Complaints (A-178 - A-248). The District Court certified classes in each of the eight actions. *Id.* However, rather than adopt the "holder" classes Plaintiffs proposed, the District Court instead adopted Argentina's formulation and defined the classes based on the "continuous holder" definition adopted in another case, *H.W. Urban GmbH v. Republic of Argentina*, No. 02-cv-5699 (S.D.N.Y.). *See* Mem. from U.S.D.J. Griesa to Counsel, dated Apr. 27, 2005 (A-2019).

Under the "continuous holder" definition, class membership was limited to those who held interests in the bonds continuously from the filing of the Complaints in 2004 through entry of final judgment. *See Seijas I*, 606 F.3d at 56. According to Argentina, the effect of this "continuous holder" requirement was that, if someone held an interest in one of the Class Bonds as of 2004, but then sold

that interest at any point prior to final judgment, that interest would simply drop out of the class altogether. (Br. of Appellant, Republic of Argentina ("Br.") at 5-6.) Thus, neither the seller nor the buyer would be a "continuous holder" eligible for class recovery.

After certifying the classes, the District Court granted summary judgment and subsequently entered judgments for the "continuous holder" classes based on estimated class damages (the "2009 Judgments"). *Seijas I*, 606 F.3d at 55-56.

## B. The *Seijas I* Appeal

Argentina appealed from the 2009 Judgments and from the underlying class certification order.

With respect to class certification, Argentina did not contest that the named Plaintiffs satisfied the requirement under Rule 23(a)(3) that their claims were "typical" of those of the certified "continuous holder" classes. Rather, Argentina challenged class certification on the independent grounds of adequacy of representation, predominance, and superiority under Rule 23(a)(4) and 23(b)(3), respectively. *Id.* at 57-58.

As to the judgments, Argentina challenged the use of estimates to calculate judgments for the "continuous holder" classes. *Id.* at 58-59.

The Class Plaintiffs did not cross-appeal as there was no dispute that they were covered and satisfied by the judgments for the "continuous holder" classes.

3

On May 27, 2010, this Court issued its decision on Argentina's appeal. *Id.* at 57-58. The Court affirmed certification of the "continuous holder" classes. *Id.* at 58. However, the Court vacated the 2009 Judgments. In doing so, the Court confirmed that aggregate relief is permissible in class actions provided that "appropriate procedures" are used to ensure that the awards "roughly reflect the aggregate amount owed to class members." *Id.* at 58-59. But the Court ruled that the specific estimation process underlying the 2009 Judgments was improper. *Id.* It therefore remanded with the instruction that the District Court "consider alternative approaches that will set damages awards that more closely reflect the losses class members experienced." *Id.* at 59.

### C. The *Seijas II* Appeal

On remand from *Seijas I*, the parties conducted fact and expert discovery with respect to damages for the "continuous holder" classes. Following submission of renewed damages calculations for the "continuous holder" class, the District Court entered new judgments for the "continuous holder" classes in 2011. *Hickory Sec., Ltd. v. Republic of Argentina*, 493 F. App'x 156, 158-59 (2d Cir. 2012) ("*Seijas II*").

Argentina again appealed. *Id.* at 159. The sole issue on appeal was the propriety of the method used by the District Court to determine class-wide damages for the "continuous holder" classes.

4

Again, the Class Plaintiffs did not cross-appeal as there was no dispute that they were covered and satisfied by the new judgments for the "continuous holder" classes.

As in *Seijas I*, the Court ruled in *Seijas II* that "aggregate class-wide relief would not be improper so long as it accurately reflected the losses to the class and adequately accounted for bondholders who are not class members." *Id.* at 159-60. However, the Court found that, because the classes were defined as only "continuous holders," the District Court had to determine "the volume of bonds purchased in the secondary market after 2004 that were not tendered or are currently held by opt-outs or other litigants"—i.e., the volume of bonds not continuously held. *Id.* at 160. The Court remanded with instructions to address this question before class judgments could be entered for the "continuous holder" classes. *Id.* at 160.

**D. Proceedings on Remand**

In accordance with the Court's mandate, the parties engaged in additional discovery on remand to attempt to calculate the aggregate volume of Class Bonds that had been traded in the secondary market. *See* Defs.' Resps. and Objections to Class Pls.' Post-Remand Doc. Req., dated Feb. 15, 2013 (A-3714); Class Pls.' Resps. to Def.'s Third Consolidated Req. for the Produc. of Docs., dated Feb. 15,

2013 (A-3692); Class Pls.' Resps. to Def.'s Fourth Consolidated Req. for the Produc. of Docs., dated Feb. 15, 2013 (A-3702).

Among other things, Plaintiffs sought information from Argentina concerning aggregate trading activity (amounts, timing, and volume) of Class Bonds since the outset of these lawsuits. *See* Defs.' Resps. and Objections to Class Pls.' Post-Remand Doc. Req., dated Feb. 15, 2013 (A-3714). In response, Argentina claimed it did not have the information differentiating the aggregate amounts of continuous and non-continuous holders. *Id.*[1]

It thus became clear that distinguishing even the aggregate volumes of continuous and non-continuous holders categories would require burdensome and time-consuming third-party discovery from, among other sources, U.S. and foreign financial institutions that hold and trade the Class Bonds on behalf of the beneficial holders. Letter from J. Scullion to U.S.D.J. Griesa, dated June 27, 2013 (A-3734).

---

[1] Prior to the *Seijas II* decision, Plaintiffs had sought information from Argentina concerning the individual identities of bond-holders. *See* Letter from C. Boccuzzi to U.S.D.J. Griesa, dated Oct. 12, 2007 (A-3759). The post-*Seijas II* discovery was different in that it also sought information about the aggregate volume of trading and of continuously-held versus traded and retraded bonds, information that Plaintiffs reasonably believed Argentina would have itself or through its advisers in light of, *inter alia*, Argentina's pricing and launch of multiple exchange offers for the Class Bonds. *See* Defs.' Resps. and Objections to Class Pls.' Post-Remand Doc. Req., dated Feb. 15, 2013 (A-3714).

In light of these developments on remand, and the difficulties they raised with respect to management of "continuous holder" classes, Plaintiffs moved to modify the class definitions. Following briefing and a hearing (*see* A-3598 - A-3790), the District Court granted Plaintiffs' motions to modify the class definitions from "continuous holder" to "holder" classes. Class Modification Orders (SPA-1-16). As set forth in the Class Modification Orders, the classes were modified to encompass all holders of beneficial interests in the Class Bonds, but to exclude holders "to the extent that their holdings (x) are the subject of a separately pending lawsuit or claim in arbitration to collect in such holdings or (y) have been exchanged for new bonds or otherwise extinguished." *Id.* The classes also are subject to opt-outs. *Id.*

On July 24, 2014, Plaintiffs submitted a proposed Class Notice and Opt Out Procedure Order providing for, among other things, notice to putative class members through multiple publications in English and Spanish, as well as notice through the LENS (Legal Notice System) maintained by DTC and similar legal and corporate action notice systems maintained by other clearing agents for the Class Bonds. *See* Notice of Settlement of Class Notice and Opt Out Procedure Order, dated July 24, 2014 (*Seijas*, 04-cv-400, Dkt. No. 245, Ex. A). As of the date of this filing, the District Court has not ordered the Class Notice and Opt Out process to commence.

7

During the summer and fall, Plaintiffs (along with many other unpaid bondholders) actively sought to participate in settlement discussions with Argentina and sought to enforce the *pari passu* protections recognized and upheld by this Court in *NML Capital, Ltd. v. Rep. of Arg.*, 727 F.3d 230, 246 (2d Cir. 2013). Letter from J. Scullion to U.S.D.J. Griesa, dated July 23, 2014 (*Seijas*, 04-cv-400, Dkt. No. 228); Mot. for Prelim. Inj. and Mem. of Law, dated July 24, 2014 (*Seijas*, 04-cv-400, Dkt. Nos. 231, 232).

The District Court has not ruled on Plaintiffs' *pari passu* motions and Argentina has not agreed to discuss any potential settlement with the Plaintiff Classes. In the meantime, Argentina has brazenly attacked and defied the U.S. judicial system—and actively sought to evade the *pari passu* and other orders lawfully issued by the courts.[2]

---

[2] *E.g.*, *NML Capital, Ltd. v. Rep. of Arg.*, 08-cv-6978 (S.D.N.Y.), Dkt. No. 696, Sept. 29, 2014 Hr'g Tr. at 28 (finding Argentina actively sought to evade and violate court orders and holding Argentina in contempt); Press Release, International Court of Justice, dated Aug. 7, 2014 (announcing Argentina's application to the ICJ contending that "the United States of America has committed violations of Argentine sovereignty and immunities and other related violations as a result of judicial decisions adopted by US tribunals concerning the restructuring of the Argentine public debt."), *available at* http://www.icj-cij.org/presscom/files/4/18354.pdf (last visited Dec. 9, 2014); Official Communique of the Argentine Government, published in Washington Post, June 29, 2014 (alleging Judge Griesa is acting out of "bias in favour of the vulture funds" with intent to "push Argentina into default" and characterizing his decisions

## SUMMARY OF THE ARGUMENT

None of Argentina's challenges to the Class Modification Orders have any legal merit. All ring particularly hollow in the specific context of these proceedings.

Argentina has never had any defense to the claims of any of its unpaid bondholders. It has conceded as much in these cases. In the decade that Class Plaintiffs and all other "holdouts" have been seeking recovery, Argentina's sole objective has been to make it more difficult for its bondholders to actually <u>collect</u> what they indisputably are owed. It is a war of attrition in which Argentina believes time is on its side and bondholders will eventually be forced to give up their legal rights. And, to the extent that it has not been able to run out the clock, Argentina has declared—indeed, advertised in full page spreads in the Washington Post—that it <u>will not</u> comply with any orders of this or any other U.S. courts with which it does not agree. As a virtual fugitive from justice acting in open contempt

---

as "absurd" and an effort to "bring us down to our knees"), *available at* http://embassyofargentina.us/embassyofargentina.us/en/informationcenter/officialc ommuniqueoftheargentinegovernment-argentinapays.pdf (last visited Dec. 9, 2014); Legal Notice from the Argentine Republic, published in Washington Post, August 7, 2014 (alleging Judge Griesa and Special Master Pollack have made "improper and false" statements), *available at* http://factcheckargentina.org/wp-content/uploads/2014/08/8-7-Arg-WaPo-Ad-Full.pdf (last visited Dec. 9, 2014).

of U.S. law to deny bondholders their rights, Argentina's invocations of equity, Due Process, and the like are particularly weak.

In the face of all this, the Class Modification Orders are a legitimate, lawful exercise of the District Court's discretion under Rule 23 to protect smaller, unpaid bondholders and give them the opportunity to enforce their rights (just as larger bondholders, like NML Capital, continue to enforce their rights and seek recovery more than a decade after Argentina's default). Argentina has not shown any grounds compelling vacatur of the Class Modification Orders.

*First*, the Class Modification Orders do not "conflict" with or otherwise violate this Court's mandate in *Seijas II*. *Seijas II* addressed only the question of how to prove damages as the classes were certified at that time, namely as "continuous holder" classes. This Court has made clear that district courts retain discretion under Rule 23(c)(1)(C) to modify a class definition on remand where, as here, doing so will avoid issues raised by the initial, certified class definition. *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007).

The law is equally clear that the Class Plaintiffs did not "waive" their right to seek Rule 23(c)(1)(C) modification in *Seijas I* or *Seijas II*. Both prior appeals involved judgments for "continuous holder" classes, including the named Plaintiffs, for the full amounts being sought on their bonds. Because the District Court and this Court had confirmed that the Class Plaintiffs would be entitled to

full recovery under the "continuous holder" certifications, the Class Plaintiffs were
not aggrieved by and had no "incentive" (let alone obligation) to cross-appeal.
*Furlong v. Shalala*, 238 F.3d 227, 235 n.4 (2d Cir. 2001). Modification under Rule
23(c)(1)(C) was appropriate when it became clear on remand from *Seijas II* that the
"continuous holder" certification in fact made it unduly difficult to obtain recovery
for those "continuous holders" and that a simpler "holder" definition would avoid
the issues and permit Class Plaintiffs to obtain recovery.

*Second*, certification of the classes as modified satisfied the requirements of
ascertainability and Due Process. As to ascertainability, the requirement (which is
not a high bar) is easily met—individuals either do or do not hold Class Bonds, an
objective fact they can readily determine. Further, the Proposed Class Notice
(including individual notice to identifiable holders, multiple forms of publication
notice, and notice through established "corporate action" systems) clearly satisfies
Due Process. Anyone who holds Class Bonds before the opt-out deadline will
have notice and the opportunity to decide whether to remain in the class. The
contours of the classes will be defined and fixed at that time. Anyone acquiring
Class Bonds <u>after</u> the opt-out deadline is an assignee that stands in the shoes and
acquires whatever rights the transferor holder had as of the opt-out deadline, both
with respect to the bonds themselves and any class claims on the bonds. There is
no Due Process deprivation because, like those who acquire claims in bankruptcy

11

after a vote on a plan, post opt-out purchasers take their rights "as is" and are not entitled to restart the opt-out process.

*Third*, Argentina cannot avoid the Class Modification Orders on the ground that the District Court has already "found" liability. Rule 23(c)(1)(C) provides that classes may be modified at any time prior to final judgment. There has been no final judgment in these actions. And Argentina's claim of "one-way intervention" is disingenuous. Genuine "one-way intervention" concerns arise only where class members have <u>unfairly</u> stood on the sidelines to see whether claims are successful and then swooped in to obtain the benefits of a liability ruling with none of the risks of preclusion. Nothing like that happened here. The District Court's "merits" ruling was *pro forma* because Argentina conceded its liability on the Class Bonds. Indeed, Argentina has never asserted that its liability depends on whether someone is a "continuous holder" or acquired its bonds yesterday. Moreover, the "non-continuous holders" did not sit on the side waiting to join. The modification of the class definition was granted because the "continuous holder" definition was unduly and unnecessarily burdensome, preventing effective recovery by <u>any</u> Class Bond holders. In sum, modifying the classes did nothing to expand Argentina's outstanding debt obligations. It only made it more likely that bondholders will be able to enforce their rights to be paid on the undisputed debts.

12

## STANDARD OF REVIEW

Class certification rulings are reviewed for abuse of discretion. *See Parker v. Time Warner Entm't. Co. L.P.*, 331 F.3d 13, 18 (2d Cir. 2003); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006) ("*In re IPO I*").

Whether a district court's order on remand complies with the Court's mandate is a question reviewed *de novo*. *See Estate of Thompson v. Comm'r*, 370 F. App'x 141, 143 (2d Cir. 2010). The Court also reviews *de novo* whether class notice satisfies Due Process. *See In re Adelphia Commc'ns. Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008).

## ARGUMENT

## I. MODIFICATION OF THE CLASS DEFINITIONS DID NOT VIOLATE THE MANDATE RULE

Argentina's "mandate" argument over reads this Court's precedent and *Seijas II*. A district court's discretion to modify a class certification under Rule 23(c)(1)(C) is not limited by an appellate mandate unless the modification is "in conflict" with the appellate ruling. *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) ("*In re IPO II*"). Here, *Seijas II* addressed only one issue: the evidence needed to prove aggregate class damages for the then-certified "continuous holder" classes. *Seijas II* did not address, let alone preclude, the District Court's discretion to consider other class definitions on remand, including

13

"holder" classes. As such, there is no conflict between the Class Modification Orders and this Court's *Seijas II* mandate.

The caselaw likewise refutes Argentina's argument that *Seijas II* "impliedly" precluded modification of the class. Even in cases in which the appellate decision <u>directly</u> addressed a class certification order, the district court was free to exercise its discretion to modify the class on remand to avoid the problems found by the appellate court. For example, in *In re IPO*, this Court expressly ruled in its initial decision that "the cases pending on this appeal may not be certified as class actions." *In re IPO I*, 471 F.3d at 27. Nonetheless, in denying the subsequent petition for reconsideration of that decision, the Court went out of its way to hold that the *IPO I* ruling had addressed "<u>only . . . the class as certified by the District Court</u>," and, therefore, its mandate did not curtail the District Court's "ample discretion" to consider a "revised class certification motion" on remand. *In re IPO II*, 483 F.3d at 73 (emphasis added).[3] Similarly, in two recent, high-profile cases, district courts have found that reversals of class certification by the U.S. Supreme

---

[3] Indeed, even when objections to class certification are raised <u>and rejected</u> in an initial appeal, the same issues can be raised under Rule 23(c)(1)(C) on remand. *See United States v. Brennan*, 650 F.3d 65, 137 n.78 (2d Cir. 2011) (rejection of objections to class certification on appeal did not prohibit Rule 23(c)(1)(C) motions to modify on remand).

Court did not preclude the courts from considering <u>modified</u> classes on remand to avoid the fatal flaw that had compelled reversal.[4]  This Court's non-class decision in *Sompo Japan Ins. Co. of Am. v. Norfolk Southern Ry. Co.*, cited by Argentina, likewise underscored that mandates should not be over read to preclude a plaintiff from raising on remand an argument not addressed by the appellate decisions.  762 F.3d 165, 175-76 (2d Cir. 2014) (mandate neither expressly nor impliedly precluded plaintiffs from shifting to alternative argument on remand).

If decisions such as *In re IPO I*, *Comcast*, and *Wal-Mart*, actually <u>reversing</u> class certification do not impliedly preclude modification of the class to avoid the flaws in class certification, a decision such as *Seijas II* that addressed only how to prove damages issues under a certain class definition cannot restrict the independent issue of discretion under Rule 23(c)(1)(C) to modify that definition in light of manageability issues.  Indeed, a key purpose of Rule 23(c)(1)(C) is to provide district courts with discretion to adjust class definitions in light of

---

[4] *See Glaberson v. Comcast Corp.*, 295 F.R.D. 95, 103 (E.D. Pa. 2013) (Supreme Court's reversal of class certification in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), did not preclude consideration of motion to certify a narrower class on remand); *Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 4329009, at *4-5 (N.D. Cal. Sept. 21, 2012) (Supreme Court's reversal of class certification in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), did not preclude consideration on remand of motion to certify narrower class).  In both *Comcast* and *Wal-Mart*, the district courts ultimately denied certification of the narrowed classes.

manageability issues or flaws in the definition that arise as the case progresses. *Marisol A. v. Giuliani*, 126 F.3d 372, 379 (2d Cir. 1997) (Rule 23(c)(1)(C) is among the "tools" available to district courts to address manageability of class actions); *see also Gene & Gene, LLC v. Biopay, LLC*, 624 F.3d 698, 703 (5th Cir. 2010) (cited in Br. at 22) (if discovery on remand makes it "clear that the District Court needs to alter, amend, or even decertify the class," "the District Court can and should do so under Rule 23(c)(1)(C).").

Finally, Argentina fares no better trying to argue that Plaintiffs somehow waived the right to seek holder classes by not raising the issue in *Seijas I* or *Seijas II*. (Br. at 22-23.)

A party is not precluded from raising an argument that was not addressed in an earlier appeal where the party had no "incentive" or "interest" to raise the argument because they were not aggrieved by the ruling at the time of the earlier appeal. *Furlong v. Shalala*, 238 F.3d 227, 235 n.4 (2d Cir. 2001). Here, although the named Plaintiffs originally sought to certify "holder" classes, neither they nor the certified classes were aggrieved by the District Court's entry of judgments in 2009 and 2011 on behalf of "continuous holder" classes because (a) the named Plaintiffs and the classes they represented were "continuous holders" and (b) as of 2009 and 2011, it appeared that the District Court's decision to certify "continuous

16

holder" classes was not prejudicial to the named Plaintiffs or the class members—i.e., they could obtain aggregate judgments.

As this Court observed in *Furlong*, it is not at all clear that Plaintiffs could have cross-appealed from the class certification decision that resulted in judgments in their favor.[5] And even if Plaintiffs technically could have been considered "aggrieved" parties with standing to assert a cross-appeal (which we do not believe they were), they had no "incentive" to do so. Until *Seijas II* was decided and it was determined on remand that Argentina had no useful information to resolve the issues raised therein, Plaintiffs did not believe that the burden of meeting the "continuous holder" class definition would be undue. As such, the law of the case doctrine did not preclude the Plaintiffs from seeking modification of the "continuous holder" ruling <u>after</u> this Court determined in *Seijas II* that additional proof of class size was needed, and after it became clear on remand that obtaining that proof raised substantial concerns about the manageability of "continuous holder" classes.

---

[5] *Compare Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 456 (8th Cir. 1990) (cited at Br. 20, 24) (plaintiff had incentive to cross-appeal where court did <u>not</u> award all of the equitable relief plaintiff sought; failure to appeal denial of equitable relief constituted waiver).

17

The cases cited by Argentina (Br. at 20) are inapposite. *United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001) and *United States v. Stanley*, 54 F.3d 103 (2d Cir. 1995) are criminal cases where this Court remanded solely for resentencing. It is well-established that, in that context, "the trial court generally is foreclosed from reconsidering the underlying merits of the conviction." *Ben Zvi*, 242 F.3d at 95; *see also United States v. Bell*, 54 F.3d 64 (4th Cir. 1993). And, unlike *Stanley*, this case does not concern arguments with respect to sentencing that were ripe at the time of the initial sentencing and appeal, but not raised. 54 F.3d at 107.[6]

---

[6] *Fogel v. Chestnutt* (Br. at 20) did not even implicate the mandate rule. 668 F.2d 100 (2d Cir. 1981). There, defendants, who were found liable for violations of the Investment Company Act ("ICA"), attempted to argue for the first time on their second appeal that there was no private cause of action under the ICA. The Court, having already affirmed defendants' liability under the ICA, noted that this issue had been implicitly decided. *Id.* at 105. At any rate, after a detailed discussion on the issue, the Court determined that there was no legal justification to call its prior (implicit) decision into question. *Id.* at 112. Moreover, the Court found that defendants had abandoned this argument because it was not included on their list of contentions in the pretrial order. *Id.* at 107-108. And in *Concrete Works of Colo., Inc. v. City & Cnty. Of Denver*, 321 F.3d 950 (10th Cir. 2003), the plaintiff attempted to raise an argument on its second appeal that the Tenth Circuit had found (on the first appeal) was already waived. *Id.* at 992.

18

## II.  THE MODIFIED CLASSES ARE ASCERTAINABLE AND PROTECT DUE PROCESS RIGHTS

### A.  The Holder Classes are Ascertainable

The "implied requirement" that a class be ascertainable is not a high bar.  It plainly is satisfied here.

To meet the implied requirement of ascertainability, "a plaintiff must demonstrate that there is an identifiable class." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 2013 WL 4067116, at *7 (E.D.N.Y. Aug. 7, 2013) (internal quotation omitted).  A class definition is sufficiently ascertainable if its contours are defined by "objective criteria." *Jeffries v. Pension Trust Fund*, 2007 WL 2454111, at *14 (S.D.N.Y. Aug. 20, 2007); *accord Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 417 (N.D. Ill. 2012).  The standard for ascertainability, therefore, is not "demanding." *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010).  Ascertainability "is designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.* ("the Court need only 'be able to ascertain the general boundaries of the proposed class.'").

Here, the "holder" classes, as defined in the Class Modification Orders, are defined by indisputably objective criteria: (1) individuals or entities either do or do not hold bonds, as determined from statements; (2) to the extent that a holder filed claims in arbitration or another litigation prior to April 24, 2014 seeking recovery

19

on Class Bonds, they are automatically excluded from class recovery; and (3) to the extent that any other holder timely files an opt-out notice, their bond holdings also will be excluded from class recovery. (SPA-1-16.)

The "holder" classes are therefore ascertainable. The point of the ascertainability requirement is that individuals receiving notice of the class definition—by direct mail, publication, or otherwise—can determine whether they meet the objective criteria for class membership and, therefore, decide whether to opt out or remain in the class. *See Boundas*, 280 F.R.D. at 417. Here, individuals who are potential class members can determine, from their investment account statements, whether they are holders and, therefore, whether to exercise their opt-out rights.

Moreover, the "general boundaries" of the classes will be known as of the conclusion of the opt-out process. <u>No claims will be either added or subtracted from the classes after that time</u>. Rather, to the extent that any Class Bonds are sold or transferred after the opt-out process concludes, the buyer or transferee will be an assignee that takes the bonds either as part of a class (if the bonds were not held by an opt-out or excluded holder) or independent of the class (if the bonds were held by an opt-out or excluded holder). *See Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 97 N.Y.2d 456, 460-61 (2002) (under New York law, the buyer of a bond

20

receives the rights to any claims or demands held by the seller prior to the transfer).[7]

Argentina does not dispute that class membership can be transferred to an assignee, as this Court has recognized. *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 102-104 (2d Cir. 2007) (no bar on assignment of class representative status). Thus, the fact that class members might transfer their Class Bonds through sale or otherwise after the opt-out process concludes poses no legal obstacle to class certification. The "boundaries" of the class remain the same and the transferee simply stands in the shoes of and takes the place of its transferor in the class. (As discussed below, the post-opt out sale of a Class Bond is similar to "claims trading" in bankruptcy proceedings in which the party acquiring the claim against a debtor stands in the shoes of the transferor—and is bound by any vote

---

[7] In contrast, *Clay v. America Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999) and *In re Sears Roebuck & Co. Tools Mktg. & Sales Practice Litig.*, 2007 WL 4287511, at *4 (N.D. Ill. Dec. 4, 2007), cited by Argentina (Br. at 26), involve situations where new claims were continuously being added (i.e., the actual size of the class—and the defendants' exposure—was growing). The additional cases Argentina cites, *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 396 (S.D.N.Y. 2008) and *Bakalar v. Vavra*, 237 F.R.D. 59, 65 (S.D.N.Y. 2006), also are inapposite because each found that determining whether an individual was a class member would require "innumerable fact intensive inquiries," including, in *In re Fosamax*, "myriad medical factors individual to each class member." 248 F.R.D. at 397.

that the transferor may have cast with respect to a plan of liquidation, for example.)[8]

These cases are similar to proceedings involving transferable instruments and interests, such as gift cards. In *Boundas v. Abercrombie & Fitch*, *supra*, the court found the class sufficiently ascertainable because it was defined by the objective criteria of whether someone was a gift-card holder. 280 F.R.D. at 413. Like bonds, the gift cards at issue in *Boundas* are transferable and useable by whoever holds them when presented. *Boundas* nonetheless certified a class of unregistered gift card holders. *Boundas*, 280 F.R.D. at 413 (claims may be brought by card purchasers "or their assignees" and certifying class of "[p]ersons who possess Abercrombie & Fitch Stores, Inc. promotional gift cards in hard copy . . . that were voided by Abercrombie on or after January 30, 2010"); *see also Maxwell v. Toys R Us*, 2011 WL 9373596 (Cal. Super. July 29, 2011) (certifying class of

---

[8] Similarly, to the extent any suits are filed seeking recovery with respect to interests that were not timely excluded from the class, Argentina will be able to seek dismissal of those cases on the ground that the interests are the subject of these class litigations.

"persons in the State of California who have purchased or received a Toys R Us and/or Babies R Us gift card on or after January 1, 2008 . . . .").[9]

As *Boundas* recognized, "ascertainability" of class membership is not an issue in such classes because membership may be determined through <u>objective criteria</u>—namely, presentation of the instrument—during the claims administration phase. 280 F.R.D. at 417-18. Moreover, "the identities of individual class members are not required in order for Plaintiff to show the existence of an <u>identifiable</u> class." *Pension Trust Fund*, 2007 WL 2454111, at \*14 (class consisting of participants in a certain pension plan was ascertainable, despite the defendant's argument that the data related to the benefit plan "contain[ed] no identifying information for the plan participants.") (emphasis added).

The cases Argentina cites for the proposition that class membership must be "ascertainable prior to the end of the action" (Br. at 16, 25) do not preclude certification here. A court need not ascertain "absent class members' actual identities . . . before a class can be certified." *Boundas*, 280 F.R.D. at 417. Rather, "[i]t is enough that the class be ascertain<u>able</u>," with class members to be identified during a claims administration process if the class prevails. *Id.* (emphasis added).

_____

[9] *See also In re BGI*, 476 B.R. 812, 823-24 (Bankr. S.D.N.Y. 2012) (publication notice of bankruptcy sufficient for unregistered gift card holders).

Here, the holder classes are ascertainable and the "boundaries" of the classes will be set as of the completion of the opt-out process by completely objective criteria.

By contrast, in the cases Argentina cites, the proposed classes would not have been ascertainable until the <u>end</u> of the litigation because class membership was largely tied to the merits of the claims and required inquiry into and resolution of "myriad" factual issues to determine whether any particular individual would satisfy the class definition. *In re IPO I*, 471 F.3d at 44-45 (vacating class certification where class membership would require resolution of multiple, individualized fact issues on the merits of the claims); *In re Fosamax*, 248 F.R.D. at 397 (rejecting proposed "wait-and-see approach" to class definition and finding classes were not "feasibly ascertainable" where class membership "hinge[d] on myriad medical factors individual to each class member"); *Bakalar*, 237 F.R.D. at 65 (proposed defendant class was not ascertainable where determining class membership would entail "an odyssey [encompassing] innumerable fact intensive inquiries" with respect to existence and ownership of artworks).

## B.  The Holder Classes Comport With Due Process

There also is no merit to Argentina's claim that it is "impossible" to provide sufficient notice to potential members of the holder classes.

First, it is well-established that actual, individual notice is not required by Rule 23 or the Due Process Clause and that alternative methods—such as

24

publication in newspapers of record, on the Court's docket, on websites, etc.—are sufficient to give notice to potential class members whose individual identities cannot be determined through reasonable effort.[10]  Publication notice has been used, for example, in the analogous situation of unregistered gift card holders.  *See also Boundas*, 280 F.R.D. at 417-18 (publication notice satisfies due process for potential members of class of unregistered gift card holders); *In re BGI*, 476 B.R. at 823-24 (publication notice of bankruptcy sufficient for unregistered gift card holders).

Here, Plaintiffs have proposed multiple forms of notice to potential class members, including: (i) individual notice mailed to those potential class members identified in prior proceedings or who respond to Summary Notices to be published; (ii) publication of Summary Notices in English and Spanish in widely-distributed publications in the U.S. and Argentina; (iii) posting of Notice to the

---

[10] *See, e.g.*, *In re Adelphia Commc'ns. Corp.*, 271 F. App'x at 44 ("Because notice . . . was reasonably provided through individually mailed notice to all known and reasonably identifiable class members, publication in several major newspapers, and entered on the District Court docket sheet, actual notice was not necessary and the notice provided here was sufficient."); *Jermyn v. Best Buy Stores, L.P.*, 2010 U.S. Dist. LEXIS 130682, at *7 (S.D.N.Y. Dec. 6, 2010) ("If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23.").

25

website maintained by Argentina's Ministerio de Economia y Finanzas Publicas de

la Nacion (routinely used by Argentina to provide notice of actions concerning its

debt); and (iv) the submission of Notice to DTC, Euroclear, and other similar

clearing entities for distribution through the legal notice or corporate action notice

systems maintained and commonly used for similar notices to noteholders.  *See*

Notice of Settlement of Class Notice and Opt Out Procedure Order, dated July 24,

2014 (*Seijas*, 04-cv-400, Dkt. No. 245, Ex. A)).  These measures will provide more

than adequate notice to all current bondholders to allow them to make an informed

decision as to whether or not to opt out of the classes.  Anyone who buys Class

Bonds between the publication of class notice and the the opt-out date likewise will

have notice of the opt-out process and deadlines.  (Indeed, these proceedings and

all the pending proceedings concerning Argentina's default are routinely monitored

by and covered in the press, on blogs, etc., thereby further ensuring that the

markets will have more than reasonable notice of the class processes and

deadlines.)[11]  Accordingly, all potential members of the holder classes will be

---

[11]  *E.g.*, Matt Day, *U.S. Judge:  Citibank May Make Interest Payment on Argentine Bonds*, The Wall Street Journal (Sept. 26, 2014), http://www.wsj.com/articles/u-s-judge-citibank-may-make-interest-payment-on-argentine-bonds-1411770775 (last visited Dec. 9, 2014); Andrew Trotman, *Argentina attacks US for 'playing dumb' over default*, The Telegraph (Aug. 6, 2014), http://www.telegraph.co.uk/finance/financialcrisis/11017589/Argentina-attacks-US-for-playing-dumb-over-

provided notice of the opportunity to opt out in accordance with Rule 23 and the requirements of Due Process.

Second, Argentina tellingly provides no support for its assertion that holders who acquire Class Bonds after the opt-out process will be deprived of Due Process. (Br. at 28-29.)  There is none.  As shown above, in Section II.A, the purchaser steps into the shoes of the seller—including all rights against Argentina and any restrictions if the seller was a class member.  Thus, there can be no deprivation of rights or property to trigger any Due Process concern:  the purchaser is getting exactly what it paid for—the rights the seller had.

For example, "claims trading" in bankruptcy (including of publicly traded debt instruments) may well occur after the vote on a plan.  The post-vote purchaser, however, is not entitled to a new vote, but is instead bound by the vote

---

default.html (last visited Dec. 9, 2014); EMTA, Markets, *Argentina* http://www.emta.org/template.aspx?id=5015 (last visited Dec. 9, 2014); Associated Press, *Argentina enacts law restructuring government debt*, theguardian (Sept. 12, 2014), http://www.theguardian.com/world/2014/sep/12/argentina-law-restructuring-government-debt-default (last visited Dec. 9, 2014); BusinessWire, *Proskauer Rose LLP Announces Summary Notice of Pendency of Class Action* (Dec. 7, 2007), http://www.businesswire.com/news/home/20071207005408/en/Proskauer-Rose-LLP-Announces-Summary-Notice-Pendency#.VIdQ7J0o7RY (last visited Dec. 9, 2014); Jacob Gershman, *Justices Reject Argentina Appeal in Sovereign Debt Case*, The Wall Street Journal (June 16, 2014), http://blogs.wsj.com/law/2014/06/16/justices-reject-argentina-appeal-in-sovereign-debt-case/ (last visited Dec. 9, 2014).

to the same extent as the seller. *E.g.*, *In re OBT Partners*, 214 B.R. 863, 869 (Bankr. N.D. Ill. 1997) ("[A] person who is a shareholder on the date the disclosure statement is approved can vote on the plan, and the vote remains valid even if the shareholder sells its stock the following week."); *In re Kellogg Square P'ship*, 160 B.R. 332, 335 (Bankr. D. Minn. 1993) (where entity acquires claim after vote on reorganization plan, assignor's vote "is a permanent, binding limitation on the transferred claim").

The case Argentina cites, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (Br. at 29), is inapposite. In *Valentino*, the Ninth Circuit expressed Due Process concerns where the class was certified to include not only existing claims, but <u>new</u> claims that would arise only after the opt-out process had concluded. That is not the situation here. Argentina knows today what its outstanding debt is and will know at the conclusion of the opt-out process how much of that debt is in the hands of members of the holder classes here. Anyone who acquires Class Bonds after the opt-out process is not acquiring a new claim to be added to the class, only the pre-existing claims and status either of an existing class member (bound by rulings in this case and entitled to the benefits of recovery for the class) or a non-class member (not bound by rulings, but also not entitled to the benefits of the class).

In sum, a post-opt-out purchaser is <u>only acquiring</u> rights (limited or not). Because a post-opt-out purchaser had no rights before the opt-out deadline, they are not deprived of any rights by the passage of that deadline.

## III. MODIFICATION OF THE CLASS DEFINITIONS AFTER SUMMARY JUDGMENT DID NOT VIOLATE RULE 23

Argentina's claim that Rule 23 categorically bars expansion of a class definition after a determination of liability stands the established law on its head.

*First*, Rule 23(c)(1)(C) expressly provides that a class certification order "may be altered or amended <u>before final judgment.</u>" (emphasis added). No final judgments exist in any of these eight actions. As such, Rule 23(c)(1)(C) permits modification of the classes.

*Second*, courts in this Circuit and others recognize that classes may be expanded after a ruling on the merits "where an amendment will not prejudice the defendant." *White v. Bowen*, 116 F.R.D. 12, 15 (S.D.N.Y. 1987) (finding no "absolute rule against post-judgment amendments," although declining to permit amendment that would add entirely new claims, not just class members) (citing cases). In *Kilgo v. Bowman Transp., Inc.*, for example, the Eleventh Circuit held that post-judgment expansion of a class is permitted when the arguments and evidence presented would have been the same if the expanded class had been

certified prior to trial.[12]  789 F.2d 859, 877-78, n.28 (11th Cir.1986).  Similarly, in

*Geneva Rock Prods. Inc. v. United States*, the Court of Federal Claims granted the

existing plaintiffs' motion for summary judgment of liability on takings claims <u>and</u>

permitted reopening of the plaintiff class to allow additional claimants to opt in for

the purpose of seeking damages on otherwise identical takings claims.  107 F. Cl.

166, 176-77 (Fed. Cl. 2012).

As the D.C. Circuit observed, multiple "Supreme Court decisions have

provided for appeal of a Rule 23(b)(3) class certification denial after a decision on

the merits of an action," demonstrating "tolerance for allowing, in appropriate

circumstances, potential class members the option of joining an action after the

trial court has passed on the merits . . . ."  *Postow v. OBA*, 627 F.2d 1370, 1382

---

[12] Argentina mischaracterizes *Kilgo* as a case involving only non-monetary relief. (Br. at 33 n.5.)  The plaintiffs there sought monetary relief in the form of backpay. *Kilgo v. Bowman Transp., Inc.*, 576 F. Supp. 600 (N.D. Ga. 1984).  Such claims were (and are) subject to Rule 23(b)(3)'s notice and opt-out requirements.  *See, e.g.*, *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1145 (11th Cir. 1983); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557-58 (2011).  And while *Kilgo* may not have used the phrase "one-way intervention," it indisputably rejected the very argument Argentina makes here—finding that post-liability class expansion is not prohibited where there is no prejudice to the defendants.

(D.C. Cir. 1980).  Indeed, absent prejudice, courts have permitted even initial class

certification after ruling on the merits of the case.[13],[14]

Here, Argentina offered no evidence that it was actually prejudiced when the

classes were modified from just "continuous holders" to all "holders."  Nor could

it.  The amount of the Republic's outstanding, defaulted debt on these eight bond

series is the same regardless of how the classes are defined, and Argentina has

never disputed its liability on that debt.  Modification of the class definitions did

not enlarge Argentina's actual exposure.  It merely increased the likelihood that

unpaid bondholders for these eight series will secure judgments.  Thus, the

situation here is nothing like that in the cases Argentina cites in which the

---

[13] *See, e.g.*, *Aho v. Americredit Fin. Servs., Inc.*, 2012 WL 273763, at *1 n.1 (S.D. Cal. Jan. 31, 2012) (although rulings on summary judgment were "dispositive" of the issues presented, they did not raise any "one-way intervention" concern because the rulings were "not entitled to preclusive effect until the Court enters a final judgment on the merits of the entire case"); *Bowers v. Windstream Kentucky East, LLC*, 2012 WL 216616, at *1 (W.D. Ky. Jan. 24, 2012) (principle of "one-way intervention" was not violated by entering partial summary judgment in favor of Plaintiffs prior to ruling on the issue of class certification).

[14] In *In re Philip Morris Inc.*, (cited by Argentina) the Court made clear that it did "not foreclose the possibility of a post-trial class certification in another case . . . ." 214 F.3d 132, 135 (2d Cir. 2000).

defendant actually showed that it would have "face[d] a smaller potential liability" absent post-liability changes to class membership.[15]

Finally, Argentina's claim that it requires protection against "one-way intervention" distorts the doctrine. As the name indicates, "one-way intervention" occurs only when potential claimants unfairly avoid all "risk" and reap only the benefits of an action by strategically waiting to see whether the merits come out in their favor—and then joining to take advantage of the ruling. *E.g.*, *In re Philip Morris Inc.*, 214 F.3d at 135 (ordering class certification prior to trial to avoid dilemma of "risk-free" intervention after trial). Here, there was never any "risk" of loss because Argentina did not and does not contest its liability on the bonds.

Moreover, the modified certification orders below bear no resemblance to the "spurious" practice of claimants waiting in the wings for a favorable ruling. The whole point of the modified certification orders was to break through the unnecessary log jam caused by the "continuous holder" definition, which was

---

[15] Br. at 32 (citing *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001) (defendant would have faced "smaller potential liability" if class members were required to exercise opt-out rights before summary judgment); *In re Vivendi*, 284 F.R.D. 144, 149 (S.D.N.Y. 2012) (modified class definition would resurrect time-barred claims); *Escott v. BarChris Constr. Corp.*, 283 F. Supp. 643, 706 (S.D.N.Y. 1968) (post-trial expansion of claimants "prejudicial to defendants"; claims not made were barred by limitations period).

making it exceedingly difficult for <u>any</u> class members—old or new—to obtain recovery, in debt Argentina admits it owes, but refuses to pay.

Finally, the Court should not be taken in by Argentina's assertions that the class definitions are irrelevant and that "individualized damages procedures" are all that is required.  (Br. at 35-36.)  In these cases in which Argentina does not contest liability, already knows—to the penny—what its aggregate exposure is, and has professed an interest in resolving its defaults, one would think Argentina would welcome the efficiency of certifying holder classes and entering judgments for them.  Among other things, doing so would <u>bar</u> subsequent individual litigations (other than on behalf of holders with bonds that were opted-out of the classes).  But, in fact, Argentina wants only to make it as difficult and unlikely as possible that the many individual holders of its bonds in the U.S. and around the world actually will prosecute claims to judgment—and undertake to enforce those small, individual judgments.  Rule 23 was designed for exactly this situation to ensure that huge wrongdoers—like Argentina—do not "win" simply because they have hurt very many people but only in individually small amounts.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court

affirm the Class Modification Orders.

Dated:     New York, New York
           December 9, 2014


                                    By: /s/ Jennifer R. Scullion
                                    Jennifer R. Scullion
                                    M. Todd Mobley
                                    PROSKAUER ROSE LLP
                                    Eleven Times Square
                                    New York, NY 10036
                                    (212) 969-3000
                                    jscullion@proskauer.com
                                    mmobley@proskauer.com


                                    Saul Roffe
                                    Law Offices of Saul Roffe, Esq.
                                    52 Homestead Circle
                                    Marlboro, NJ  07746
                                    (732) 375-9220
                                    sroffe@gmail.com

                                    Michael Diaz, Jr.
                                    Carlos F. Gonzalez
                                    Marta Colomar-Garcia
                                    DIAZ REUS & TARG LLP
                                    100 S.E. 2nd Street
                                    Suite 3400
                                    Miami, FL 33131
                                    (305) 375-9220
                                    mdiaz@diazreus.com
                                    cgonzalez@diazreus.com

34

mcolomar@diazreus.com

Co-Lead Counsel for Plaintiffs

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B).

Excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), the foregoing brief contains 6,467 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft Word 2010 for Windows 7 in Times New Roman (14 point) proportional-type font.

Dated:  December 9, 2014

/s/ Jennifer R. Scullion